E-FILED
Friday, 29 September, 2017 02:10:35 PM
Clerk, U.S. District Court, ILCD

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,        )
                                )
        Plaintiff Pro Se,        )
                                )
    vs.                          ) No. 16-cv-2089
                                )
CITY OF DECATUR, DECATUR POLICE )
DEPARTMENT, OFFICER CLOSEN,      )
OFFICER DUFFY, OFFICER HAGEMEYER, )
OFFICER SAWYER, OFFICER SHULL, and )
OFFICER ZILLER,                  )
                                )
        Defendants.              )

DEPOSITION
OF
DARELLE FOX

        Deposition of DARELLE FOX, taken on
August 18, 2017, starting at 9:00 a.m., at Macon
County Jail, 333 South Franklin Street, Decatur,
Illinois, at the instance of the Defendants, pursuant
to Notice, before Michelle A. Duzan, Certified
Shorthand Reporter in the State of Illinois.

* * * * * * * * * * *

ANCHOR REPORTING, INC.
P.O. Box 25471
Decatur, Illinois 62525-5471
217-428-0946

MOTION FOR
SUMMARY JUDGMENT

Exhibit 4

```
 1    APPEARANCES:

 2        MS. KIMBERLY E. ALLEN-JONES, PRO SE
          C/O Macon County Jail
 3        333 South Franklin Street
          Decatur, Illinois  62523

 4

 5        CITY OF DECATUR
          One Gary K Anderson Plaza
 6        Decatur, Illinois  62523
          By:  MR. JOHN T. ROBINSON
 7             Representing the Defendants.

 8    ALSO PRESENT:

 9        Officer Acup

10        Corporal Austin

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                         I N D E X

2

WITNESS                                    EXAMINATION

3

DARELLE FOX

4

5       By Mr. Robinson                         4
        By Ms. Allen-Jones                      33

6

7

8                      E X H I B I T S

EXHIBIT                                 MARKED FOR ID

9

10              **** NO EXHIBITS MARKED ***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1              (Witness duly sworn.)

2              MR. ROBINSON:  Please let the record reflect

3    that we're in the library of the Macon County Jail.

4    This is the deposition of Darelle Fox who's currently

5    incarcerated here on a matter unrelated to the case

6    that Kimberly Allen-Jones has filed against the City

7    of Decatur and several police officers.

8              Kimberly Allen-Jones is present.

9    Correctional Officer Acup is also present.  Kimberly

10   Allen-Jones is also incarcerated here on a different

11   matter also unrelated to the allegations contained in

12   her complaint.

13                 DARELLE FOX,

14   called as a witness herein, having been first duly

15   sworn, was examined and testified as follows:

16                 EXAMINATION

17   BY MR. ROBINSON:

18      Q.    Mr. Fox, will you please state your full

19   name and spell your name for the record?

20      A.    Darelle Fox, D A R E L L E , F O X.

21      Q.    And what is your age, sir?

22      A.    31.

23      Q.    What's your middle initial?

24      A.    D.

Page 5

1      Q.    D as in David?

2      A.    Daniel.

3      Q.    Thank you.  Mr. Fox, I'm here to ask you

4   some questions, a little bit about yourself, but

5   primarily about an incident that happened back in

6   September of 2015 in which Kimberly Allen-Jones was

7   arrested for possession of controlled substance.

8            As you can see, there's a court reporter in

9   the room.  She's taking down the words that are

10  spoken, and we can provide you a copy of that

11  transcript.  Your testimony here today is under oath,

12  and it can be used as testimony in Kimberly

13  Allen-Jones' case.

14           I will ask, sir, that you answer yes or no

15  to the questions as the case may be rather than

16  uh-huh or huh-uh because as I said, we're making a

17  record of the words that are spoken here.  I will

18  also ask, sir, that you please wait until I'm

19  finished before answering a question, and I will

20  attempt to afford you the same courtesy.  If you

21  don't hear or don't understand a question, will you

22  please say so?

23     A.    Yes.

24     Q.    Okay.  And, Mr. Fox, if at any time you feel

1    that you need a break, please simply let me know.

2    You okay with that?

3        A.    Yes.

4        Q.    Okay.  Now, Mr. Fox, my name is John

5    Robinson.  I'm assistant city attorney.  I'm not a

6    police officer.  I'm a lawyer for the City and for

7    the police officers that have been sued by Kimberly

8    Allen-Jones.  I'm not a lawyer with the Macon County

9    State's Attorney's Office.  I haven't spoken with the

10   Macon County State's Attorney's Office about this

11   deposition or any matters between you and them.  I

12   haven't notified them about this deposition, and I'm

13   not involved in any pending criminal matters that

14   involve you or Ms. Jones -- Allen-Jones, and I don't

15   intend to get involved.

16          I have no intention of asking you, sir,

17   about facts related to any pending criminal charges.

18   I'm only interested in your knowledge of the events

19   of September 25th, 2015, in which Ms. Allen-Jones was

20   arrested for possession of controlled substance.

21          Mr. Fox, are you represented by an attorney?

22       A.    You talking about in this matter right here?

23       Q.    On any matter.

24       A.    Yes.

Page 7

1      Q.    Okay.  And have -- that attorney represents

2   you on one or more pending criminal charges, correct?

3      A.    Correct.

4      Q.    Okay.  Have you talked to your attorney

5   about this deposition?

6      A.    No.

7      Q.    Okay.  Do you have any questions after my

8   explanation of what this deposition is about?

9      A.    Yes.

10      Q.    Okay.

11      A.    You say after your questions?

12      Q.    Yes.

13      A.    All of these or just that one?

14      Q.    I'm sorry.

15      A.    All of your questions or just that one

16   question?

17      Q.    All of my questions.

18      A.    You said after your deposition of your

19   questions, right?

20      Q.    This is a deposition.  It's --

21      A.    You say -- you asked me, did I have any

22   questions after your questions --

23      Q.    Yes.

24      A.    -- of this deposition?

1    Q.    Yes.  Do you have questions?  What are they?

2    A.    Oh, not right now.  I thought you said after

3  your questions.

4    Q.    I'm --

5    A.    You said after your questions, do I have any

6  questions?

7    Q.    Oh, no.  I meant after my explanation.

8  After my explanation --

9    A.    Oh.

10   Q.    -- of what this case is about and why I want

11  to talk to you and ask you questions.

12   A.    Right, after you get done asking me your

13  questions.

14   Q.    No.  No.  That's --

15   A.    No, I don't have no questions right now.

16   Q.    Okay.  That's okay.  Now, I don't intend to

17  ask you any questions about any pending criminal

18  charges or investigations involving you.  If you

19  believe that a question that I ask is somehow related

20  to pending criminal charges or investigations, will

21  you please simply tell me, and I will attempt to

22  clarify the question?  As I said, what I'm here to do

23  today is find out what you know about that deal back

24  in September of 2015 when Ms. Allen-Jones was

1    arrested for possession of controlled substance in a

2    car that you were driving.

3              Now, do you have any questions about how

4    your testimony today may be used?

5         A.   Not at this point.

6         Q.   Okay.  Now, are you willing to speak with me

7    about Kimberly Allen-Jones' arrest in September 2015

8    for possession of controlled substance?

9         A.   I'm speaking on your behalf?

10        Q.   On --

11             MS. ALLEN-JONES:  The truth here.

12   BY MR. ROBINSON:

13        Q.   On Miss Allen-Jones' behalf?

14        A.   Yeah.

15        Q.   Okay.  Do you recall --

16        A.   I'm saying that's what I'm doing or I'm just

17   speaking in general?

18        Q.   You're not -- you're just a witness, sir.

19        A.   Oh, okay.

20        Q.   I don't -- I mean, what I'm saying is you

21   don't need to choose sides.  You -- you have taken an

22   oath to tell the truth.  So the only thing that's

23   expected of you is that you attempt to recall what

24   happened, attempt to tell us here in this room what

1    happened, and do so truthfully.  That's the only

2    thing that's required of you.

3         A.   Okay.

4         Q.   So are you willing to speak with me about

5    her arrest?

6         A.   Yeah.

7         Q.   Okay.  And do you recall the arrest?

8         A.   I remember some things.

9         Q.   All right, sir.  Now, Mr. Fox, do you have

10   family in Macon County?

11        A.   Yes.

12        Q.   And can you give me just kind of a general

13   description of your family here?

14        A.   Mother, brother.

15        Q.   Father, sisters?

16        A.   No.

17        Q.   Aunts, uncles?

18        A.   Yes.

19        Q.   Grandparents?

20        A.   No.

21        Q.   Okay.  And are they on the Fox side or on

22   your mother's side?

23        A.   Both.

24        Q.   Okay.  What's your mother's maiden name,

1    sir?

2        A.    Busby.

3        Q.    Okay.  How long have you lived in Macon

4    County?

5        A.    All my life.

6        Q.    Okay.  Your -- is your mother from Macon

7    County as well?

8        A.    No.

9        Q.    Okay.  Where is she originally from?

10       A.    Kentucky.

11       Q.    Okay.  Mr. Fox, can you please describe your

12   current health?

13       A.    Good.

14       Q.    Okay.  And are you now or have you in the

15   past been known by any other names?

16       A.    No.

17       Q.    Any nicknames?

18       A.    No.

19       Q.    Okay.  Are you now or have you ever been

20   party to a lawsuit?

21       A.    No.

22       Q.    Other than the pending criminal matter?

23       A.    Right.

24       Q.    So you've never sued anybody?

Page 12

1       A.   No.

2       Q.   Okay.  And back in September of 2015, sir,

3   did you own a vehicle, an automobile?

4       A.   No.

5       Q.   Okay.  Do you recall operating a black 2002

6   Chevrolet Monte Carlo automobile back in September of

7   2015?

8       A.   Yes.

9       Q.   And would that have been Lashawn Wheeler's

10  car?

11      A.   Correct.

12      Q.   You knew Lashawn back in September of 2015;

13  is that correct?

14      A.   Correct.

15      Q.   Okay.  And how long had you known him then?

16      A.   How long have I known who?

17      Q.   Lashawn Wheeler.

18      A.   Probably a little less than a year.

19      Q.   Okay.  And are you still acquainted with

20  him?  Would you still --

21      A.   With her?

22      Q.   Oh, Lashawn is a she.  I apologize.  So back

23  in September of 2015, you'd known Lashawn for about a

24  year?

1       A.    Yeah.

2       Q.    Okay.  Are you still acquainted with her?

3    Do you still keep in touch with her?

4       A.    Not so much.

5       Q.    Okay.  Now, in -- it was Lashawn that owned

6    the black Chevrolet Monte Carlo vehicle, correct?

7       A.    Correct.

8       Q.    And you were -- do you recall operating that

9    vehicle on September 25th of 2015?  I know the date

10   is impossible.  But that's the date that you all got

11   pulled over and Miss Allen-Jones got arrested.

12      A.    Oh, okay.  Yeah.

13      Q.    Okay.  Now, do you recall the police pulling

14   you over?

15      A.    Yes.

16      Q.    And do you recall where?

17      A.    I believe Leafland Street.

18      Q.    Okay.  Do you recall the approximate time of

19   the day, sir?

20      A.    No.

21      Q.    Okay.  Was it daytime, nighttime?

22      A.    Might have been night.

23      Q.    All right, sir.  And do you recall what the

24   police said when they pulled you over?

1      A.    Step out of the car.

2      Q.    Okay.  And where had you been coming from

3   when they asked you -- when they pulled you over?

4      A.    I think over here by Green Street.

5      Q.    Okay.  Was there --

6      A.    King Street.  One of them streets over

7   there.

8      Q.    Somebody's house, a business?  Where were

9   you coming from, do you recall?

10     A.    Somebody residence.

11     Q.    Okay.  And where were you going to, if you

12  recall?

13     A.    Oh, over to my people's house over there

14  on -- by Leafland Street.

15     Q.    Okay.  When you say "my people," you mean

16  friends --

17     A.    Family.  Oh, family.

18     Q.    And was anybody in the vehicle with you?

19     A.    Yes.

20     Q.    Who?

21     A.    Kimberly.

22     Q.    Say?

23     A.    Kimberly.

24     Q.    Kimberly.  And I noticed you just nodded

Page 15

1   your head toward Kimberly Allen-Jones.  That's who

2   you mean; is that correct?

3       A.   Correct.

4       Q.   Now, how long back in September of 2015 had

5   you known Kimberly Allen-Jones?

6       A.   Well, I know her through the family stuff,

7   but I can't really recall like how many, you know

8   what I'm saying, years or nothing like that but...

9       Q.   You had known her for a while?

10      A.   Yeah, I would say.

11      Q.   Okay.  And how long had Kimberly Allen-Jones

12  been in the car with you when the police pulled you

13  over?

14      A.   Maybe like five minutes, ten minutes.

15      Q.   Okay.  Where did you -- where did she get in

16  the car?

17      A.   At Green Street.

18      Q.   All right, sir.  And was she going to your

19  people with you then?

20      A.   I believe so.  I can't really remember if I

21  was dropping her off or she was coming over there

22  with me.

23      Q.   Okay.  Now, Mr. Fox, when did you last speak

24  with Kimberly Allen-Jones?

```
 1        A.   I don't recall.

 2        Q.   Okay.  Have you spoken to her since you've

 3   been in the Macon County Jail?

 4        A.   No.

 5        Q.   Okay.  Do you know Kimberly Allen-Jones by

 6   any other name or nickname?

 7        A.   Kim.

 8        Q.   Anything else?

 9        A.   No, not that I know of.

10        Q.   Now, have you discussed Ms. Allen-Jones'

11   case with her?

12        A.   No.

13        Q.   Okay.  Have you discussed her case with

14   anyone other than your attorney?

15        A.   No.

16        Q.   Okay.  And have you spoken to anyone about

17   this case?

18        A.   No.

19        Q.   Have you read anything about this case?

20        A.   No.

21        Q.   Mr. Fox, where did you stay back in

22   September of 2015?

23        A.   This is around the time where all this took

24   place, right?
```

Page 17

1       Q.    Yes, sir.

2       A.    King.

3       Q.    King Street.  And with whom?

4       A.    My brother.

5       Q.    Okay.  What's your brother's name?

6       A.    Joseph.

7       Q.    Is it Fox as well, sir?

8       A.    Yeah.

9       Q.    Okay.  Now, do you recall what you'd been

10   doing that day before the police pulled you over?

11      A.    No.

12      Q.    Do you recall whether you had anything to

13   drink that day?

14      A.    No.

15      Q.    Did you -- do you recall whether you used

16   any drugs that day, prescription or otherwise?

17      A.    No.

18      Q.    Do you remember what clothing you were

19   wearing?

20      A.    No.

21      Q.    Do you remember the shoes that you were

22   wearing?

23      A.    No.

24      Q.    Okay.  Mr. Fox, did you have any form of

1    identification with you when the officers stopped the

2    car you were driving?

3         A.    It's possible.

4         Q.    Okay.

5         A.    I don't remember.

6         Q.    You don't recall.  Okay.  And can you please

7    describe the traffic stop?

8         A.    Like you got -- police got behind us.

9         Q.    I'm sorry?

10        A.    The police got behind us.  Is that what you

11   mean?  The police got behind us.

12        Q.    Tell me what happened.

13        A.    The police got behind us.  They pulled us

14   over.

15        Q.    Okay.  Did the lights come on?

16        A.    Yeah.

17        Q.    Did they put the siren on, or do you recall?

18        A.    No.

19        Q.    Okay.  And did you pull over to the side of

20   the road, or did you pull in a driveway?

21        A.    I pulled in a driveway.

22        Q.    Okay.  Did you --

23        A.    Because I was turning around, because he

24   didn't -- actually didn't even really hit the lights

Page 19

1   for real.  I was going to park.  And then all of a

2   sudden, then he pulled up.

3        Q.   Okay.  And what happened then?

4        A.   Then that's when he hit the lights.  Then he

5   just came and asked me for my -- did I have a

6   driver's license, whatever, and stuff.

7        Q.   Got you.

8        A.   Then got out of the car.

9        Q.   You stopped the car in the driveway?

10       A.   Yeah.

11       Q.   And did the officer come up and speak with

12   you at the driver's side door?

13       A.   Yeah.

14       Q.   Okay.  And after -- after the officer spoke

15   with you at the driver's side door, did he

16   immediately ask you to step from the car or did he go

17   back to his squad car?

18       A.   I don't know, but I know he asked me to step

19   out of the car at some point.

20       Q.   All right, sir.  And what did you do?

21       A.   Well, I stepped out the car and then went

22   towards like the back trunk.

23       Q.   On the driver's side?

24       A.   Yeah.

1       Q.    All right, sir.  And what happened then?

2       A.    Then that's when they started coming real

3  aggressive towards Kim.

4       Q.    All right, sir.  Can you please describe

5  what you mean?

6       A.    Got to talking real loud.  They got to

7  talking real loud and got to trying to get her out of

8  the car and pulling on her and -- and at one point,

9  he slammed her to the ground, I think, pulled her out

10  of the car, because I was on the other side.  I know

11  they were snatching on her and pulling on her and

12  stuff.

13      Q.    Okay.

14      A.    Then I think at some point, they tased her,

15  I think, I believe.

16      Q.    All right.  Let's take these piece by piece.

17  Where -- where exactly did you go after you stepped

18  out of the driver's seat of the car?

19      A.    Told you by the back trunk.

20      Q.    Close to the car or away from the car?

21      A.    Close to the car.

22      Q.    Was there a police officer by you?

23      A.    Yeah.

24      Q.    Okay.  Were you under arrest at that time?

1       A.    No.

2       Q.    Okay.  Were you speaking with the police

3   officer?

4       A.    Yeah.

5       Q.    Okay.  What were you speaking about, if you

6   recall?

7       A.    I don't recall.

8       Q.    Okay.  And were you face to face with a

9   police officer?

10      A.    Yeah, for that brief second.

11      Q.    What brief second?

12      A.    Until they got to pulling her, snatching on

13  her out the car.

14      Q.    Then what happened?  Did you turn?

15      A.    Did they what?

16      Q.    Did you turn?

17      A.    Yeah.  I turned.  We all turned.

18      Q.    Okay.

19      A.    It got real loud.  It was just...

20      Q.    Okay.  Now, backing up just for a minute,

21  can you -- do you recall how Kimberly Allen-Jones was

22  dressed that night?

23      A.    Dressed?

24      Q.    Yes, sir.  What clothing she was wearing?

1      A.    Huh-uh.  I don't recall.

2      Q.    All right, sir.  Now, did you see Kimberly

3   Allen-Jones smoke cannabis that night?

4      A.    No.

5      Q.    Did you see her take any -- any controlled

6   substance that night?

7      A.    No.

8      Q.    Have you ever known Kimberly Allen-Jones to

9   use cannabis?

10     A.    No.

11     Q.    Have you ever known her to use any

12   controlled substance?

13     A.    No.

14     Q.    Okay.  Now, did you observe her possess any

15   drugs, legal or illegal, while she was in the car

16   with you?

17     A.    No.

18     Q.    Did you observe her take any drugs while she

19   was in the car with you?

20     A.    No.

21     Q.    Did you see her attempt to put anything

22   inside or under her skirt after the police officer

23   stopped the car?

24     A.    No.

Page 23

1     Q.    Did -- after the police officer stopped the

2     car, did you see her place a clear plastic bag in her

3     mouth?

4     A.    No.

5     Q.    Did you see her place anything in her mouth?

6     A.    No.

7     Q.    Now, Mr. Fox, at any time that night, did

8     you possess any controlled substance?

9     A.    No.

10    Q.    Do you recall hearing the officers tell

11    Kimberly Allen-Jones to spit out whatever she put in

12    her mouth?

13    A.    They was -- it was -- there was a lot of

14    yelling going on between the officers and everybody.

15    Q.    Okay.

16    A.    And --

17    Q.    Do you recall them telling her to spit it

18    out?

19    A.    No, I don't recall --

20    Q.    Okay.

21    A.    -- clearly or anything, but there was a lot

22    of noise, a lot of yelling about something.

23    Q.    So the yelling could have included the

24    officers telling her to spit it out?

Page 24

1      A.    Could have been.  I don't know.

2      Q.    Okay.  Now, did you see an officer open -- a

3   police officer open the passenger side door of the

4   car?

5      A.    Yeah.

6      Q.    And did you see the officer attempt to grab

7   Kimberly Allen-Jones' arm?

8      A.    Yeah.

9      Q.    Okay.  And did you see Kimberly Allen-Jones

10  pull away from the officer?

11     A.    I mean, I think she -- no, I don't think her

12  pulling away.

13     Q.    You didn't see that?

14     A.    No, I don't think she did that.

15     Q.    Okay.  Did you see her turn her body so that

16  her back was to the center console of the car?

17     A.    No.

18     Q.    When you say you didn't see it, are you

19  saying that it didn't happen or that it could have

20  happened but you just didn't see it?

21     A.    No.  What I'm saying is, you know, a person

22  got to brace their self to get out of the car because

23  the car sit low, you know what I'm saying, because

24  it's a Monte Carlo.  So as -- you know what I'm

1    saying, the person is getting pulled on or getting

2    pulled, you know, your -- your reaction is just to

3    brace yourself.  You going to fall out the car.

4        Q.   Okay.

5        A.   So they could be mistaken of her, you know

6    what I'm saying, getting pulled on and try to brace

7    herself and trying to get out of the car, because you

8    don't get out of the car head first.  You get out of

9    the car with your feet.  You know what I'm saying?

10       Q.   I understand that.  But did you see her to

11   put her back toward the center console?  So if you'd

12   been in the driver's seat, her back would have been

13   toward you.  Did you see her do that?

14       A.   No.

15       Q.   And did you see her lift her feet up off the

16   floor of the vehicle?

17       A.   No.

18       Q.   Okay.  Now, did you ever see Kimberly

19   Allen-Jones step out of the car?

20       A.   No.

21       Q.   Okay.  Did you see the officers pull her

22   from the car?

23       A.   Yeah.

24       Q.   Okay.  Did you hear the officers -- or I'm

1    sorry.  Strike that.

2            Did you hear Kimberly Allen-Jones tell the

3    officers her name that night?

4        A.   No.

5        Q.   Okay.  Do you recall hearing them ask her

6    her name?

7        A.   No.

8        Q.   Do you recall whether Kimberly Allen-Jones

9    provided the officers her personal information that

10   night, name and date of birth?

11       A.   I don't -- I don't believe they gave her a

12   chance to.

13       Q.   Okay.  Do you recall that they asked for

14   her --

15       A.   No.

16       Q.   -- personal information?

17            So you wouldn't know how many times they

18   asked either; is that correct?

19       A.   Correct.

20       Q.   Do you recall the officers asking Kimberly

21   Allen-Jones to step from the car?

22       A.   No.

23       Q.   Okay.  So you wouldn't recall how many times

24   they asked her either; is that correct?

Page 27

1    A.    No.

2    Q.    It's not correct or that is correct?

3    A.    I --

4    Q.    Let me say it again.  I believe that --

5    well, I asked you if you recall the officers asking

6    Kimberly Allen-Jones to step from the car, and you

7    responded, no, you didn't recall that.  Is it fair

8    then also to state that you wouldn't recall how many

9    times the officer asked her that?

10   A.    Correct.

11   Q.    Okay.  Mr. Fox, did you know that there was

12   cocaine, heroin, and cannabis in a plastic bag

13   discovered by the officers by Kimberly Allen-Jones

14   after she was removed from the car?

15   A.    No.

16   Q.    You didn't learn it that night?

17   A.    No.

18   Q.    Okay.  Did you know the bag contained eight

19   smaller baggies containing cannabis?

20   A.    No.

21   Q.    Do you know that it contained a smaller bag

22   containing cocaine?

23   A.    No.

24   Q.    And another small bag containing heroin?

1    A.    No.

2    Q.    Okay.  Mr. Fox, were those your drugs?

3    A.    No.

4    Q.    Okay.  Do you know where the drugs came

5    from?

6    A.    No.

7    Q.    Did you throw or pass any drugs to Kimberly

8    Allen-Jones that night?

9    A.    No.

10    Q.    Did you throw or pass anything at all to

11    Kimberly Allen-Jones that night after the police

12    pulled the car over?

13    A.    No.

14    Q.    Mr. Fox, did you know that there was a clear

15    glass smoking pipe in Kimberly Allen-Jones' left back

16    pocket that night?

17    A.    No.

18    Q.    Is it fair to state then, sir, that you are

19    not the owner of the clear glass smoking pipe that

20    was found in her pocket that night?

21    A.    Correct.

22    Q.    Do you have any idea how the smoking pipe

23    got in her pocket?

24    A.    No.

Page 29

1      Q.    Had you ever seen her use the smoking pipe?

2      A.    No.

3      Q.    Now, did you hear Kimberly Allen-Jones tell

4  the officers while she was being arrested, kill me,

5  kill me, just kill me?

6      A.    No.

7      Q.    Do you believe Kimberly Allen-Jones resisted

8  the officers to have her step from the car that

9  night?

10      A.    No.

11      Q.    Okay.  Can you explain why?

12      A.    Never gave her time to.

13      Q.    Okay.  How so?

14      A.    They was pulling and yanking on her, trying

15  to get her out the car.

16      Q.    But you don't recall whether they asked her

17  to step from the car, though?

18      A.    No, they -- no, they didn't.

19      Q.    Well, which is it?  You testified earlier

20  that you didn't recall that.

21      A.    No.  You asked me, did you assume that it's

22  okay to say that you didn't hear.

23      Q.    Okay.  So is it your testimony, sir, that

24  the officers did not ask Kimberly Allen-Jones to step

Page 30

1    from the car?

2        A.   I don't see how they could have when they

3    immediately just started pulling on her.

4        Q.   Now, did you see Kimberly Allen-Jones

5    struggling with the officers as they pulled her from

6    the car?

7        A.   Trying to keep herself from falling or

8    trying to fight the police?  You mean struggling?  I

9    don't know.

10       Q.   Okay.  Did you see her trying to keep

11   herself from falling?

12       A.   I believe so.

13       Q.   Did you see her fighting with the police?

14       A.   No.

15       Q.   Okay.  Did you --

16       A.   I mean, fighting -- you said fighting like

17   throwing blows or something like that?  Scratching?

18   Pulling?  I mean, what do you mean by fighting?

19       Q.   Well, was she twisting around, trying to get

20   away from them?

21       A.   No.

22       Q.   Okay.  Did you see Ms. Jones -- Allen-Jones

23   struggle with the ambulance people that night?

24       A.   No.

1    Q.   Did you see the ambulance people arrive?

2    A.   Yeah.

3    Q.   And did you see that they tended to Kimberly

4  Allen-Jones?

5    A.   Yeah.

6    Q.   Okay.  Did you ever see any officer choke

7  Kimberly Allen-Jones?

8    A.   No.

9    Q.   Ms. Allen-Jones says that there are civilian

10  witnesses to the incident.  Are you aware of any

11  person or persons who witnessed this?

12    A.   Say that one more time.

13    Q.   Ms. Allen-Jones has said that there are

14  witnesses to this in addition to you.  Are you aware

15  of other people who saw this?

16    A.   There was a few people that was out there.

17    Q.   Do you know any of them?

18    A.   No.

19    Q.   Have you spoken to anybody about it?

20    A.   No.

21    Q.   Okay.  Can you describe for me the -- all

22  the statements that you made to the police officers

23  that night?

24    A.   Not -- just the fact that I didn't have

Page 32

1    no -- no license.  And that's about it that I can --

2    that I can remember.

3         Q.    Okay.  You told him who you were?

4         A.    I mean, yeah.

5         Q.    And did you -- did they ask you about the

6    drugs?

7         A.    No, not that I remember.

8         Q.    Okay.  Now, did you make any statements to

9    them about Kimberly Allen-Jones or the drugs?

10        A.    No.

11        Q.    Can you tell me any statements you heard

12   Kimberly Allen-Jones say to the officers that night?

13        A.    No.

14        Q.    Don't recall any?

15        A.    No.

16        Q.    Does that mean you don't recall, or do you

17   recall her -- let me ask you a clearer way.

18             Do you recall Kimberly Allen-Jones saying

19   anything to the officers that night?

20        A.    There was a lot -- there was a lot of

21   commotion going on.  And a lot of it had to do with

22   the police screaming and hooting and hollering.

23        Q.    The question is:  Do you recall Kimberly

24   Allen-Jones saying anything?

1    A.   No.

2    Q.   Okay.  And did you hear any -- any of the

3  people that were around talk to the police that

4  night?

5    A.   Did I hear?

6    Q.   Yes, sir.

7    A.   Huh-uh.

8    Q.   Okay.

9    A.   I mean, no.

10      MR. ROBINSON:  Mr. Fox, that's all the

11  questions I have.  Thank you.

12      Did you want to ask him questions?

13                EXAMINATION

14  BY MS. ALLEN-JONES:

15    Q.   If you can recall, the lighting -- what type

16  of lighting is on that particular block?  How is the

17  lighting?  Would you describe it as very good?  Was

18  it very good, or was it dark or what at that time of

19  the traffic stop?

20    A.   I believe it was dark.

21    Q.   The Monte Carlo that you were driving, are

22  the windows clear or is there a tint in the windows?

23    A.   Very tinted.

24    Q.   When you mean very tinted, does that mean

Page 34

1   dark tint?

2       A.   Dark.   Real dark tinted.   Can't see inside

3   tint.

4       Q.   Okay.   That neighborhood, could you possibly

5   describe the -- the -- just say -- you know, some

6   neighborhoods are predominantly this race or this

7   race.   Would you say that the neighborhood that the

8   particular traffic -- that driveway where we pulled

9   up in, could you say it's one -- predominantly one

10  race or another, that neighborhood?

11      A.   Yeah.   It's mainly blacks over there.

12           Ms. ALLEN-JONES:  Okay.   And -- no further

13  questions.

14           MR. ROBINSON:  All right.   I don't have any

15  follow-up.   Thank you very much, Mr. Fox.

16           MS. ALLEN-JONES:  Thank you.

17           THE COURT REPORTER:  Signature?

18           MR. ROBINSON:  Oh, yeah.   Mr. Fox, the court

19  reporter has been taking down the words that were

20  spoken here.   As a witness, the rules allow you the

21  opportunity to review that and make -- make

22  corrections.   Typically the corrections are in the

23  nature of spelling names correctly and things like

24  that.   The rules don't allow you an opportunity to

1   correct what you said to what you wanted to say or

2   what you thought you should have said.  Typically

3   witnesses waive the opportunity to review and offer

4   corrections to the transcript.  However, that's up to

5   you.

6           If you wish to review the transcript, you'll

7   be provided a copy of it.  You'll have, I believe,

8   three or four weeks in which to note any

9   inconsistent -- any incorrect items in the

10  transcript.  And then if you don't respond, then the

11  transcript will be deemed accepted by you as it is.

12  Do you wish to waive, or do you wish to read the

13  transcript?

14          THE WITNESS:  Read it.

15          MR. ROBINSON:  Okay.

16                  WITNESS EXCUSED AT 9:34 a.m.

17

18

19

20

21

22

23

24

Page 36

```
 1               UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF ILLINOIS
 2

 3    KIMBERLY E. ALLEN-JONES,            )
                                          )
 4            Plaintiff Pro Se,           )
                                          )
 5       vs.                              )No. 16-cv-2089
                                          )
 6    CITY OF DECATUR, DECATUR POLICE     )
      DEPARTMENT, OFFICER CLOSEN,         )
 7    OFFICER DUFFY, OFFICER HAGEMEYER,   )
      OFFICER SAWYER, OFFICER SHULL, and  )
 8    OFFICER ZILLER,                     )
                                          )
 9            Defendants.                 )

10            I hereby certify that I have read the
      foregoing transcript of my deposition given at the
11    time and place aforesaid, consisting of Pages 1 to
      39, inclusive, and I do again subscribe and make oath
12    that the same is a true, correct and complete
      transcript of my deposition so given as aforesaid,
13    and includes changes, if any, so made by me.

14                         DARELLE FOX
      SUBSCRIBED AND SWORN TO
15    Before me this        day
      of                , A.D. 2017.
16            Notary Public

17

18

19

20

21

22

23

24
```

1    STATE OF ILLINOIS   )
                         )  SS:
2    COUNTY OF MACON     )

3

4          I, Michelle A. Duzan, CSR No. 084-004270, a

5    Notary Public within and for the County of Macon,

6    State of Illinois, and a Certified Shorthand Reporter

7    of said state, do hereby certify:

8          That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12         That the foregoing deposition transcript was

13   reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony given

16   and the proceedings had;

17         That the said deposition was taken before me

18   at the time and place specified;

19         That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in the

23   outcome of this action.

24         IN WITNESS WHEREOF, I do hereunto set my

1  hand and affix my seal of office at Forsyth,

2  Illinois, this 30th day of August, 2017.

3

4

5

6

7              Notary Public, Macon County, Illinois.

8              My commission expires 10/18/17.

9

10             Michelle A. Duzan, CSR No. 084-004270

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 39

1           ANCHOR REPORTING, INC.
                 P.O. Box 25471
2            Decatur, Illinois  62525
                August 30, 2017
3
    Mr. Darelle Fox
4   Macon County Jail
    333 South Franklin Street
5   Decatur, Illinois  62523

6

    RE:  Allen-Jones vs. City of Decatur, et al.
7
    Dear Mr. Fox:
8
            Enclosed is your deposition taken in the
9   above-captioned matter on August 18, 2017, along with
    the original errata sheet.  Pursuant to the rules of
10  court, please read the transcript and sign the
    signature page.
11          Under the provisions of the Rules pertaining
    to the reading and signing of deposition transcripts,
12  you have 30 days from the date of this notice to
    attend to this matter.  If any corrections/changes
13  are required, they must be made on the errata sheets,
    not on the transcript itself.  All errata sheets must
14  be signed.  After you have completed the above,
    please send the original back to me, and I will
15  facilitate delivery to all counsel.
            Our office has no authority to grant an
16  extension of time for review of the transcript.  So
    please understand that should you fail to sign and
17  return the certificate within the specified time
    period, the unsigned deposition may then be used as
18  fully as though signed, with certain exceptions under
    the Rules.
19

20                         Very truly yours,

21

22                         Michelle A. Duzan, CSR

23

24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY E. ALLEN-JONES, | ) |
| | ) |
| Plaintiff *Pro Se,* | ) |
| vs. | ) Case No. 16-cv-2089 |
| | ) |
| CITY OF DECATUR, DECATUR POLICE | ) |
| DEPARTMENT, OFFICER CLOSEN, | ) |
| OFFICER DUFFY, OFFICER | ) |
| HAGEMEYER, OFFICER SAWYER, | ) |
| OFFICER SHULL, and OFFICER ZILLER, | ) |
| | ) |
| Defendants. | ) |

## OFFICER CLOSEN'S AFFIDAVIT IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUR AFFIANT, Justin J. Closen, on oath states and avers:

1. I am a Police Patrol Officer for the City of Decatur, and have been since before September 25, 2015.

2. Attached hereto as Closen Affidavit Exhibit 1, and incorporated by reference is a copy of the "Reporting Officer Narrative" I prepared regarding an incident that occurred shortly after 11:30 P.M. on September 25, 2015, in the 800 block of W. Leafland in Decatur, Illinois, involving Kimberly Allen-Jones.

3. The "Reporting Officer Narrative" is a true and accurate account of my observations of traffic stop and subsequent hospitalization of Kimberly Allen-Jones, alleged in Kimberly Allen Jones' Complaint in this case.

4. If called to testify in this cause, I would testify substantially as set forth in my "Reporting Officer Narrative", with the exception that in the last paragraph on the first page of the report, my statement that I observed Officer Duffy heading



MOTION FOR
SUMMARY JUDGMENT

Exhibit 5

-2-

towards the front driver's side door should read that I observed Officer Duffy

heading towards the front passenger side door.

5. Based on the observations described in my report, I believed the use of a single

short burst from my Department issued Taser was necessary to prevent Kimberly

Allen-Jones from harming herself by ingesting what appeared to me to be a

controlled substance.

6. Based on the observations described in my report, I believed Officer Duffy's

application of pressure to the pressure point just behind Kimberly Allen-Jones'

right ear, was necessary to prevent her from harming herself by ingesting what

appeared to me to be a controlled substance.


FURTHER AFFIANT SAYETH NOT.

<u>     /s/ J.J. Closen                              </u>
                    J.J. CLOSEN


SUBSCRIBED and SWORN to before me this 25th day of September 2017.



<u>      /s/ Kelly J. Geisler                              </u>
                    Notary Public

# REPORTING OFFICER NARRATIVE

| | | OCA |
|---|---|---|
| City Of Decatur Police Department | | *15-010864* |
| Victim | Offense | Date / Time Reported |
| *Society* | *POSSESSION OF CANNABIS 30GM AND* | *Thu 09/24/2015 23:22* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Arrestee: Darelle D. Fox, ▊▊▊▊▊▊(Traffic NTA)
　　　　　Kimberly E. Allen-Jones, ▊▊▊▊(Persons Wanted)

On 9/25/15 I was assigned to the DPD bike patrol along with Officer Sawyer. We were both dressed in full department issued bike patrol uniform. This uniform consists of a black, long sleeve, collared shirt with an embroidered badge along with "Police" in large white lettering on the back and black athletic type pants. We were riding fully marked DPD mountain bikes which are equipped with red/blue flashing lights mounted on the front handlebars.

On the above date at approx. 2332 hrs I was riding n/b in the 900 block of N. Pine when my attention was drawn to a black 2002 Chevrolet Monte Carlo (IL Reg E939768) that had just turned n/b on Pine from Marietta without using a turn signal to indicate the turn. I relayed this information to Officer Duffy, who was acting as our chase car, and requested he conduct a traffic stop on the vehicle. Officer Duffy located this vehicle in the 800 block of W. Leafland and conducted a traffic stop in the driveway of 855 W. Leafland.

It should be noted that I know from my police experience that the general area where this vehicle was stopped is a high crime area where numerous gun related crimes have occurred during third shift hours. I also know from my police experience that this area is also known for open air drug sales and other illicit criminal activity such as prostitution.

Upon arrival at the stop I observed Officer Duffy standing at the driver's side window of the vehicle and was speaking with the driver of the vehicle, who was later identified as Darelle D. Fox, ▊▊▊▊▊▊▊ I walked up the driver's side window and asked Darell if he had a valid driver's license and he advised that he did not. I asked Darell if his license was suspended or revoked and he advised that he believed it to be suspended. As I spoke with Darell I could smell the very strong odor of raw cannabis emanating from inside the vehicle.

Based on the self admission by Darell that his driver's license was suspended I had him step from the vehicle and walk to the rear driver's side door. I then requested that Darrell put his hands on top of his head in order for me to conduct a pat down of his person for weapons. Darell complied with this order and placed his hands on top of his head. As I began to pat down Darell, my attention was drawn to the b/f front seat passenger, who was later identified as Kimberly E. Allen-Jones, ▊▊▊▊▊▊▊ It should be noted that I had a clear view of Kimberly through the open driver's side door from my position standing near the driver's side rear door of the vehicle.

I observed Kimberly placing her left hand between her legs and up the front of her skirt in a motion that was indicative her attempting to conceal some sort of contraband on her person. I immediately yelled at Kimberly in a loud clear voice something to the effect of "Whatever you're sticking in your pants...knock it off." I then ordered Kimberly to show me her hands in a loud, clear voice. At this time observed Kimberly remove her left hand from her skirt immediately bring her hand towards her mouth. I observed that Kimberly appeared to a have a small, clear baggie, which was knotted at the top, and appeared to contain a white substance in her left hand as she brought it up to her mouth. I know that this type of small plastic baggie is consistent with narcotics packaged for street level sale. Kimberly then placed this baggie in her mouth and began a chewing motion with her jaw. It appeared to me at this point that Kimberly was attempting to destroy evidence that was in her possession. At this point I alerted Officer Duffy that Kimberly was attempting to destroy contraband by eating it.

I observed Officer Duffy heading towards the front driver's side door in order to open it up and make contact with Kimberly. As Officer Duffy was opening the door I observe Kimberly turn her back towards the center console of the vehicle and bring her knees up to her chest as if she were going to kick Officer Duffy with both feet when he opened the door. I observed Officer Duffy open the door and attempt to obtain control of Kimberly's right arm with

# REPORTING OFFICER NARRATIVE

| | | OCA |
|---|---|---|
| *City Of Decatur Police Department* | | *15-010864* |
| Victim | Offense | Date / Time Reported |
| *Society* | *POSSESSION OF CANNABIS 30GM AND* | *Thu 09/24/2015 23:22* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

both hands. Kimberly responded to this by pulling away from Officer Duffy sliding her body further towards the center of the vehicle, with her knees still pulled up to her chest and both feet towards Officer Duffy. I then removed my department issued Taser (Serial #X00-401824), removed the cartridge, and delivered a drive stun to the upper center portion of Kimberly's back as I gave her the loud verbal command to "Spit it out." This drive stun was approx. 1-2 seconds in length and Kimberly's response to the drive stun was immediate. As a result of the drive stun, Kimberly's upper body lunged forward towards the open passenger side door and this gave Officer Duffy the opportunity to conduct a straight arm takedown, effectively removing her from the vehicle.

Once Kimberly was out of the vehicle my attention was refocused on Darell, who remained standing at the rear driver's side fender of the vehicle throughout this incident. I secured Darell in double locked handcuffs, which were checked for proper fit, before escorting him to Officer Duffy's patrol vehicle. Although Kimberly was out of my sight on the other side of the vehicle while I was securing Darell, I could hear both Officer Duffy and Officer Sawyer continuing to give her loud verbal commands to spit out whatever she had in her mouth.

After I secured Darell in the patrol vehicle, I went back over to where Officer Duffy and Officer Sawyer had Kimberly secured in double locked handcuffs in the prone position on passenger side of the vehicle. It appeared to me as Kimberly was unconscious and would not respond to questions asked by Officer Sawyer and Officer Duffy. At this time DAS and DFD were called to the scene to render medical aid. While Kimberly was lying on the ground, I observed a clear plastic baggie lying on the ground near her feet that appeared to contain numerous smaller baggies of a green leafy substance as well as at least one small baggie of a white rock like substance. I know from my police training and experience that this type of green leafy substance is consistent with cannabis and the white rock like substance is consistent with crack cocaine, both packaged for street level sale. Officer Sawyer subsequently collected this clear baggie of suspected narcotics.

Once DAS arrived on scene, Kimberly was placed on a gurney and secured in the back of the ambulance. Kimberly became combative with DAS/DFD personnel and made statements about wanting to die. Subsequently she was transported to St. Mary's for an involuntary admission. See Officer J. Hagemeyer's report in reference to this involuntary admission.

After Kimberly was transported from the scene I conducted a check of Darell's driver's license status through dispatch and it showed as follows:

M/7819

SOS 09242015 2355

SOS20 NO VALID ILLINOIS LICENSE
DL/IP STA/SUSPENDED
TDL/TIP STA/SEE ILOLNHELP
CDL STA/SEE ILOLNHELP
SCHLBUS STA/NOT A SCHOOL BUS DRIVER (SEE ILOLNHELP)

FOX DARELLE D



RES-PID CLASS/

---

# REPORTING OFFICER NARRATIVE

| City Of Decatur Police Department | | OCA |
|---|---|---|
| | | *15-010864* |
| Victim | Offense | Date / Time Reported |
| *Society* | *POSSESSION OF CANNABIS 30GM AND* | *Thu 09/24/2015 23:22* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

1 STOPS IN EFFECT
NO CONV LAST 12 MO
SUSP 04202007  SAFETY
END

A tow sheet was completed and the vehicle was towed PDA with a UUMV hold placed on it. The DPD Owner Notification Form was completed and explained to Darell, who was later issued the violator copy. A LEADS printout was submitted with this report verifying the vehicle was not stolen at the time of the stop. During the tow inventory of the vehicle I noted a 24 oz can of Heineken beer sitting in the center console of the vehicle. I observed this can to contain approx. 1/6th of its still cool contents remaining and noted the liquid inside to be gold in color and have the odor of an alcoholic beverage. The contents of this Heineken beer were disposed of in front of Officer Duffy's in car video camera.

After the vehicle was towed from the scene, Darell was transported to DPD headquarters in order for a formal video/audio taped interview to be conducted in reference to the contraband located at the scene.

Once at DPD headquarters Officer Sawyer conducted a Mirandized Interview of Darell. Officer Duffy was responsible for obtaining fingerprints from Darell in order for them to be compared to potential latent prints located on the suspected narcotics packaging.

After the interview/fingerprinting was complete I issued Darell the following citations:
410422- Failure to Signal When Required
410423- Driving While License Suspended
410424- Illegal Transportation of Alcohol (Driver)

Darell was given a court date for the citations of 10/26/16 in courtroom 2A at 0830 hrs. Darrel signed the citations promising to comply with their terms and conditions before being released from headquarters without incident.

See follow ups from Officer Sawyer, Officer Duffy and Officer J. Hagemeyer for more information reference this incident.

A DPD Prisoner Injury Resistance Form was completed and submitted with this follow up.

Vehicle Info:
M/5001

SOS 09252015  0003

STA/VALID

E939768 052016  ORIG PLT
WHEELER LASHON R



2G1WW12E329208737  BLK/BLK  2002 CHEVROLET COUPE
PASSED VIN EDIT

---

# REPORTING OFFICER NARRATIVE

| *City Of Decatur Police Department* | | OCA |
|---|---|---|
| | | *15-010864* |
| Victim | Offense | Date / Time Reported |
| *Society* | *POSSESSION OF CANNABIS 30GM AND* | *Thu 09/24/2015 23:22* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

REGISTRATION IS FROM THE VEHICLE MASTER FILE

M/7819

SOS  09252015  0020

STA/VALID    ORIG TITLE ISS/07092015

TTL/15190697445   PURCHASED USED
VIN/2G1WW12E329208737   PASSED VIN EDIT
2002 CHEV    CP BLK/BLK
ODM/    MILEAGE NOT REQUIRED
PUR/07012015
LIC/E730191   072016

OWN/LEIBENGOOD GARY L
███████████ OWNER/DLN MATCH
████████████████
SURR TTL/X3214697932   ORIG TITLE 080213 IL
PRIOR TITLE INFO:
X1124690425   ORIG TITLE 050411 IL
X7031662516   CORR TITLE 013107 IL
X6129145027   ORIG TITLE 050906 IL
T2015046001   ORIG TITLE 011502 IL
MCO    TYPE UNKNOWN

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff *Pro Se,*　　　)
　　　vs.　　　　　　　　　　　　　　　)　　Case No. 16-cv-2089
　　　　　　　　　　　　　　　　　　　)
CITY OF DECATUR, DECATUR POLICE　　　)
DEPARTMENT, OFFICER CLOSEN,　　　　　)
OFFICER DUFFY, OFFICER　　　　　　　　)
HAGEMEYER, OFFICER SAWYER,　　　　　　)
OFFICER SHULL, and OFFICER ZILLER,　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　)

## OFFICER DUFFY'S AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUR AFFIANT, Kenneth A. Duffy, on oath states and avers:

1. On September 24, 2015, I was a Police Patrol Officer for the City of Decatur, having hired on with the Department in July of 2011.

2. Attached hereto as Duffy Affidavit Exhibit 1, and incorporated by reference is a copy of the "Case Supplemental Report" I prepared regarding an incident that occurred shortly after 11:30 P.M. on September 24, 2015, in the 800 block of W. Leafland in Decatur, Illinois, involving Kimberly Allen-Jones.

3. The "Case Supplemental Report" is a true and accurate account of my observations of the incident, including the traffic stop and subsequent hospitalization of Kimberly Allen-Jones alleged in Kimberly Allen Jones' Complaint in this cause.

4. If called to testify in this cause, I would testify substantially as set forth in my "Case Supplemental Report".



MOTION FOR
SUMMARY JUDGMENT
Exhibit 6

-2-

5. Based on the observations described in my report, I believed Officer Closen's use of a single short burst from his Department issued Taser was necessary to prevent Kimberly Allen-Jones from harming herself by ingesting what appeared to me to be a controlled substance, and also necessary to prevent her from harming me by kicking me with her feet.

6. Based on the observations described in my report, I believed my brief application of pressure to the pressure point just behind Kimberly Allen-Jones' right ear, was necessary to prevent her from harming herself by ingesting what appeared to me to be a controlled substance. I ceased applying pressure when I believed she had already swallowed what she placed in her mouth. I did not place my hand on her neck.

7. Attached hereto as Duffy Affidavit Exhibit 2, and incorporated by reference is a true and accurate copy of the audio-video recording of the occurrence that was recorded on the Decatur Police Department's recording system from the squad car I was operating that night, including a microphone attached to my person.

FURTHER AFFIANT SAYETH NOT.

_/s/ K A. Duffy_____
K.A. DUFFY

SUBSCRIBED and SWORN to before me this 25th day of September 2017.

_/s/ Kelly J. Geisler_____
Notary Public

CASE SUPPLEMENTAL REPORT                    Printed: 08/09/2016  10:51

City Of Decatur Police Department                              OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*        Case Mng Status: *NA*        Occurred:

Offense: *F.*

| | | |
|---|---|---|
| Investigator: *DUFFY, K. A. (KD1310)* | Date / Time: *09/25/2015 04:11:32, Friday* | |
| Supervisor: *SHULL, C. E. (CS0233)* | Supervisor Review Date / Time: *09/25/2015 06:05:45, Friday* | |
| Contact: | Reference: *Follow-up* | |

On 09-23-15 I was assigned to third shift patrol, wearing full DPD issued summer uniform and driving fully marked squad car 823 which is equipped with a fully functioning camera and emergency lights. On the above stated date I was working as a chase car for Ofc Sawyer and MPO Closen who were assigned to bike patrol.

At approximately 2332 hours MPO Closen advised of a black 2002 Chevrolet Monte Carlo with IL registration E939768. MPO Closen advised he observed the vehicle had failed to signal when required at the intersection of Marietta and Pine and asked that I complete a traffic stop on the vehicle.

I was currently located near the intersection of Van Dyke and Packard. MPO Closen advised the vehicle was northbound on Pine. I traveled northbound on Van Dyke 1 block and turned eastbound on Leafland. At this time I located the vehicle turning westbound from Pine onto the 800 block of W Leafland. I passed the vehicle midblock, completed a three point turnabout and I activated my overhead emergency lights. I completed a traffic stop on the vehicle as it pulled into the driveway of 855 W Leafland.

I approached the vehicle and introduced myself as a DPD officer. I explained the reason for the stop and asked the b/m driver for his driver's license and the proof of insurance for the vehicle. The driver advised he did not current have a valid driver's license but did have valid insurance for the vehicle.

While standing next to the driver's door and speaking the driver I could smell, what I recognized through my training and experience as, raw cannabis.

MPO Closen then approached the vehicle to speak with the driver and I advised him that the driver stated he does not have a valid license and that I could smell the odor of cannabis.

The driver was later identified as Darelle D Fox 

MPO Closen advised Darelle to exit. As he was doing so MPO Closen began to address the front seat passenger, later identified as Kimberly E Allen-Jones ⬛⬛⬛⬛⬛⬛. This drew my attention to Kimberly. MPO Closen stated to Kimberly "whatever you are sticking in your pants, knock it off" and ordered her to get her hands out.

MPO Closen advised Ofc Sawyer to get Kimberly out of the vehicle as it appeared she was trying to conceal something on her person. I began to move to the passenger side of the vehicle while keeping visual contact of Kimberly and observed her put something in her mouth. The object appeared to be a small white object in a clear baggie knotted on one end. Kimberly appeared to begin to chew. I advised MPO Closen and Ofc Sawyer that she was attempting to eat something. I instructed Kimberly to stop several times in a loud and clear voice.

As I approached the passenger side door Kimberly turned her body so her feet were closest to the passenger door and her head was near the center of the passenger compartment. I opened the passenger door took a hold of her right arm.

Investigator Signature:

CASE SUPPLEMENTAL REPORT

Printed: 08/09/2016 10:51

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*          Case Mng.Status: *NA*          Occurred:

Offense: *.F.*

Kimberly attempted to pull away from me and toward the center of the vehicle. MPO Closen then drive stunned Kimberly on her upper back with his taser while ordering her to spit out what she was concealing.

I pulled Kimberly from the vehicle and completed a straight arm take down placing Kimberly, face down, on the ground directly outside of passenger's door. I restrained Kimberly's right arm in a transport hold and applied pressure to the pressure point just behind her right ear. Multiple times in a loud and clear voice I order her to spit out whatever she had put in her mouth. I stated to the female that I saw her and she would be charged with a felony for destroying evidence. Kimberly continued to chew the object and refused to open her mouth.

Ofc Sawyer assisted in restraining Kimberly and also gave orders to her to spit out what she had placed in her mouth. Kimberly continued to refuse to comply with any orders to remove the object from her mouth.

I secured Kimberly in handcuffs which were checked for proper fit and double locked.

Ofc Sawyer advised of a large plastic bag, containing a green leafy substance along with white rock like substances, which he observed directly next to Kimberly's person. I observed, near her legs, a clear pipe which was burnt at one end and contained burnt scouring pad. I recognized this object, through my training and experience, as a device used to smoke crack- cocaine. A similar object was then located in her left rear pocket by Ofc J Hagemeyer.

All suspected controlled substances and paraphernalia was preserved for prints/DNA and collected by Ofc Sawyer.

I then accompanied Ofc Ziller as he completed SFST with Darelle to determine if he was DUI. Ofc Ziller Determined he was not and I re-secured Darelle in the rear of my squad car.

Kimberly was taken to St. Mary's Hospital by DAS. Ofc Hagemeyer accompanied DAS and completed an involuntary admission for Kimberly.

I transported Darelle to DPD headquarters, completed a DPD fingerprint card and secured him in an interview room. I submitted the fingerprint card to evidence using evidence tag number C258532.

Darelle was issued a notice to appear for his traffic charges and released from custody at DPD headquarters.

Ofc Sawyer completed a DPD persons wanted and sworn statement for Kimberly as she was involuntarily St. Mary's Hospital.

I completed a DPD prisoner injury/resistance form and submitted it with this report.

My in squad camera and audio was activated and continuously functioning during this entire incident, beginning with the traffic stop and ending upon my arrival to DPD headquarters.

Investigator Signature:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,                    )
                                            )
                    Plaintiff *Pro Se,*     )
          vs.                               )   Case No. 16-cv-2089
                                            )
CITY OF DECATUR, DECATUR POLICE             )
DEPARTMENT, OFFICER CLOSEN,                 )
OFFICER DUFFY, OFFICER                      )
HAGEMEYER, OFFICER SAWYER,                  )
OFFICER SHULL, and OFFICER ZILLER,          )
                                            )
                    Defendants.             )

### OFFICER SAWYER'S AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUR AFFIANT, Joseph M. Sawyer, on oath states and avers:

1.  I am a Police Patrol Officer for the City of Decatur, and have been since before September 24, 2015.

2.  Attached hereto as Sawyer Affidavit Exhibit 1, and incorporated by reference is a copy of the "Case Supplemental Report" I prepared regarding an incident that occurred shortly after 11:30 P.M. on September 24, 2015, in the 800 block of W. Leafland in Decatur, Illinois, involving Kimberly Allen-Jones.

3.  The "Case Supplemental Report" is a true and accurate account of my observations of traffic stop and subsequent hospitalization of Kimberly Allen-Jones, that is alleged in Kimberly Allen Jones' Complaint in this case.

4.  If called to testify in this cause, I would testify substantially as set forth in my "Case Supplemental Report".



MOTION FOR
SUMMARY JUDGMENT
Exhibit 7

-2-

5.  Based on the observations described in my report, I believed Officer Closen's

    use of a single short burst from his Department issued Taser was necessary to

    prevent Kimberly Allen-Jones from harming herself by ingesting what appeared

    to me to be a controlled substance.

FURTHER AFFIANT SAYETH NOT.

___/s/ J.M. Sawyer_____
J.M. SAWYER

SUBSCRIBED and SWORN to before me this 25th day of September 2017.

__/s/ Kelly J. Geisler_____
Notary Public

## CASE SUPPLEMENTAL REPORT

Printed: 08/09/2016 10:51

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE/PENDING* | Case Mng Status: *NA* | Occurred: |
| Offense: *.F.* | | |

| | |
|---|---|
| Investigator: *SAWYER, J. M. (JS1294)* | Date / Time: *09/25/2015 05:55:08, Friday* |
| Supervisor: *SHULL, C. E. (CS0233)* | Supervisor Review Date / Time: *09/25/2015 06:14:50, Friday* |
| Contact: | Reference: *Follow-up* |

Arrested (NTA): Darelle D. Fox ▓▓▓▓▓▓▓ (DWLS)
Arrested (Persons Wanted): Kimberly E. Allen-Jones ▓▓▓▓▓▓▓
-Possession of Controlled Substance
-Possession of Controlled Substance with Intent to Deliver
-Possession of Cannabis 2.5 to 10 grams
-Possession of Cannabis with Intent to Deliver
-Resisting/Obstructing a Peace Officer
-Obstructing Justice (Destroying Evidence)
-Possession of Drug Paraphernalia
-Obstructing Identification

On 09-24-15 at approximately 2332 hours I was operating as a bike patrol unit with MPO Closen. At this time we were wearing full DPD issued bike patrol uniform and fully marked DPD mountain bikes. At this time MPO Closen and I were riding our bikes north on Pine when we observed a black 2002 Chevrolet Monte Carlo (IL REG E939768) turn north onto Pine from Marietta without using its turn signal. MPO Closen advised Officer Duffy, who was acting as our chase car, of the suspect vehicle and the IVC violation. The vehicle then turned west bound into Leafland and Officer Duffy conducted a traffic stop on the Chevrolet as it pulled into the driveway of 855 W. Leafland.

MPO Closen continued north on Pine to Leafland to arrive at the traffic stop. I went west on Packard incase the suspect vehicle made it to Van Dyke and went north or south. Upon arriving at the traffic stop, Officer Duffy and MPO Closen had already made contact with the driver who was later identified as Darelle D. Fox ▓▓▓▓▓▓▓ As I was getting of my bike Officer Closen was placing Darelle into hand cuffs as he openly admitted that he had a suspended driver's license and there was a strong smell of raw cannabis emanating from within the vehicle.

I then overheard MPO Closen state something to the effect of: Whatever you're sticking up your pants, knock it off. MPO Closen then advised Officer Duffy and I to remove the front seat passenger from the vehicle. The passenger was later identified as Kimberly E. Allen-Jones ▓▓▓▓▓▓▓ As Officer Duffy and I were moving towards the vehicle I heard Officer Duffy state "She's eating it. She's eating it." At this time I believed that Kimberly was attempting to ingest narcotics or other contraband. Officer Duffy arrived at the front passenger door and opened it at which time he attempted to grab Kimberly to remove her from the vehicle. Kimberly then turned her body so that her back was facing the driver's side seat and lifted her feet and legs into vehicle. I then observed MPO Closen conduct a Taser drive stun to Kimberly's back neck area which caused her to lean forward towards the open passenger door. Officer Duffy then took control of Kimberly's right arm and conducted a straight arm take down on Kimberly effectively removing her from the vehicle.

Officer Duffy placed Kimberly on the ground assuming control of her right arm as I took control of her left arm. Officer Duffy and I placed Kimberly's arms behind her back securing her in hand cuffs. During cuffing, Kimberly attempted to pull her hands away from Officer Duffy and I but failed to do so. Officer Duffy and I then gave Kimberly several loud

Investigator Signature:

**CASE SUPPLEMENTAL REPORT**

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*          Case Mng Status: *NA*          Occurred:

Offense: *.F.*

verbal commands for her to spit out the substance she placed into her mouth. While giving Kimberly these commands, I observed her to be actively chewing on the substance in her mouth. MPO Closen later advised that he observed Kimberly had placed a clear knotted plastic baggie containing a white substance in her mouth. This type of packaging is consistent with narcotics packaged for street level sales.

Once Kimberly was secured in hand cuffs she immediately stopped moving and shut her eyes tightly as if she were unconscious or unresponsive. Due to this behavior, DAS was called to the scene. Fearing that Kimberly harmed herself, I asked her several times what she had ingested. Kimberly would not respond and continued to lie on the concrete with her eyes shut. Kimberly appeared to be breathing normally and I could not see any signs of injury which would cause her to be unresponsive. DAS arrived on scene and placed Kimberly on a cot requesting her hand cuffs to be removed for easier transport.

Kimberly was placed in the ambulance. I later heard DAS personnel yell for police assistance. I ran to the ambulance and observed Kimberly to be on the cot but pulling her arms away from DAS personnel as they were attempting to put in an IV. I took control of Kimberly's left arm and head to ensure she did not bite me. While holding Kimberly she yelled repeatedly "Kill me. Kill me. Just kill me. I don't even care." DAS personnel were unable to put in an IV because Kimberly continued to pull her arms away. Kimberly was then secured to the ambulance cot with hand cuffs so she would not cause issue during her transportation. Officer J. Hagemeyer followed DAS to SMH where a petition for involuntary admission was completed. See Officer Hagemeyer's report for further information.

Prior to Kimberly being placed on the ambulance cot and while she was proned out on the driveway concrete, I observed a large plastic bag on the concrete next to her left leg. I seized the bag observing several other small bags inside. I later observed that the large bag contained eight individually packaged baggies filled with a green leafy substance. Due to my police training and experience I believed the substance to be cannabis. The suspected cannabis was later confirmed positive using a Duquenois-Levine field test kit. The total weight of all eight baggies was 8.8 grams. The cannabis was later tagged as evidence (evidence tag number C258522) and secured in a locker at headquarters.

I also observed a single baggie containing a white, rock like substance, which due to my police training and experience, I believed to be crack/cocaine. The suspected crack/cocaine later tested positive for cocaine using a Scott Cocaine Reagent test kit and weighed 1.2 grams. The suspected crack/cocaine was later tagged as evidence (evidence tag number C258523) and secured in a locker at headquarters.

I observed baggie containing a light brown, rock like substance which, due to my police training and experience, I believed to be heroin. The suspected heroin tested positive using a Nitric acid Reagent test kit and weighed 0.5 grams. The suspected heroin was later tagged as evidence (evidence tag number C258524) and secured in a locker at headquarters.

Due to the individually packaged cannabis, crack/cocaine, and heroin, I believed the narcotics were packaged in such a way to be redistributed via street level drug sales

Officer J. Jagemeyer conducted a search of Kimberly's person and located a clear glass pipe in her left back pocket. The pipe had one burnt end and contained metal scouring pad. The pipe appeared to have been broken in half. The other half was located on the concrete in between Kimberly's legs as she was in the prone position. Due to my police training and experience, I believed the pipe to be used to smoke narcotics such as crack/cocaine. The pipe was later tagged as

Investigator Signature:

**CASE SUPPLEMENTAL REPORT**

Printed: 08/09/2016 10:51

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*     Case Mng Status: *NA*     Occurred:

Offense: *F.*

evidence (evidence tag number C258525) and secured in a locker at headquarters.

The original plastic baggie containing the narcotics was tagged as evidence (evidence tag number C258526) and secured in a locker at headquarters. An ISP evidence receipt was completed as submitted with the narcotics evidence.

The Monte Carlo was towed PDA by Prairie Land Towing service in accordance to the Unlawful use of Motor vehicle guidelines.

Darelle Fox was transported to DPD headquarters and secured in interview room 178 activating the in-room audio and video camera. Officer Duffy completed a DPD finger print card obtaining Darelle's finger prints.

At 0138 hours I read Fox his Miranda rights from DPD Custodial Advise Form to which Fox initialed and signed. Fox stated he would speak to me without an attorney present.

INTERVIEW OF DARELLE D. FOX ▮▮▮▮▮▮▮▮▮▮▮▮

Darelle advised that he was in the area of Dunham and Green when he observed a B/F exit a residence with an enclosed porch two houses east of Dunham on the south side of Green. Darelle stated he was on his way to a friend's residence on Leafland when the B/F flagged him down for a ride. Darelle stated the B/F identified as "KK" and did not provide her full name. Darelle stated he had never met KK before this incident. Darelle stated KK asked where he was going to which he advised he was going to a friend's house on Leafland and would give her a ride there if she wished. Darelle stated KK accepted the ride and stated "I just came up on something." Darelle advised she did not state exactly what this meant but he believed she was referring to drugs.

Fox stated he never saw KK with narcotics as they drove to Leafland. I asked Fox if the narcotics where his and he stated they were not. I asked Fox if he had given the narcotics to Kimberly to hide but he stated no. Fox stated he had nothing to do with the narcotics and that he has no narcotics arrests on his record.

The interview of Fox was terminated at 0147 hours. The custodial advise form was tagged as evidence (evidence tag number C258529) and submitted with this report.

Fox was released with his citations and UUMV documents.

While on scene at 855 W. Leafland, Kimberly was uncooperative and refused to provide her name to officers. When she was transported to SMH, officers were still unsure of her actual identity. While later speaking with Officer Hagemeyer, she advised Kimberly was conscious and alert while speaking with Officers and SMH staff. Officer Hagemeyer questioned Kimberly repeatedly as to her name and date of birth. Kimberly refused to cooperate and would not provide any personal information to police.

Using the information from Fox as to where he first made contact with Kimberly, I was able to ascertain that Kimberly was leaving 987 W. Green. Officer Hackleman conducted a follow up at this address making contact with a resident who provided him with Kimberly's name. Once Kimberly was positively identified, I observed that Kimberly had an active IDOC warrant and this is possibly why she refused to provide her name and date of birth.

Due to being psychiatrically admitted to St. Mary's Hospital, Kimberly was not processed into MSO at the time of this

Investigator Signature:

**CASE SUPPLEMENTAL REPORT**

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE/PENDING* | Case Mng Status: *NA* | Occurred: |
| Offense: *.F.* | | |

incident. A DPD persons wanted was completed for Kimberly on the following charges:

-Possession of Controlled Substance
-Possession of Controlled Substance with Intent to Deliver
-Possession of Cannabis 2.5 to 10 grams
-Possession of Cannabis with Intent to Deliver
-Resisting/Obstructing a Peace Officer
-Obstructing Justice (Destroying Evidence)
-Possession of Drug Paraphernalia
-Obstructing Identification

A LEADS/CAD wanted persons entry form was completed. A Prisoner Injury/Resistance form was completed a submitted.

Investigator Signature:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,                     )
                                             )
                        Plaintiff *Pro Se,*  )
            vs.                              )   Case No. 16-cv-2089
                                             )
CITY OF DECATUR, DECATUR POLICE              )
DEPARTMENT, OFFICER CLOSEN,                  )
OFFICER DUFFY, OFFICER                       )
HAGEMEYER, OFFICER SAWYER,                   )
OFFICER SHULL, and OFFICER ZILLER,           )
                                             )
                        Defendants.          )

### SERGEANT SHULL'S AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUR AFFIANT, Chad E. Shull, on oath states and avers:

1. I am a Sergeant with the City of Decatur, and have been since before September 24, 2015.

2. Attached hereto as Shull Affidavit Exhibit 1, and incorporated by reference is a copy of the "Case Supplemental Report" I prepared regarding an incident that occurred shortly after 11:30 P.M. on September 24, 2015, in the 800 block of W. Leafland in Decatur, Illinois, involving Kimberly Allen-Jones.

3. The "Case Supplemental Report" is a true and accurate account of my observations of the incident, including the traffic stop and subsequent hospitalization of Kimberly Allen-Jones alleged in Kimberly Allen Jones' Complaint in this cause.

4. If called to testify in this cause, I would testify substantially as set forth in my "Case Supplemental Report".



MOTION FOR
SUMMARY JUDGMENT

Exhibit 8

5. I was not present when Officer Closen used his department issued Taser to subdue Kimberly Allen-Jones.

6. I was not present when Kimberly Allen-Jones was removed from the vehicle and handcuffed.

7. I was not present when Officer Duffy applied pressure to the pressure point behind Kimberly Allen-Jones' right ear, to attempt to get her to spit something out of her mouth before she swallowed it.

8. Attached hereto as Shull Affidavit Exhibit 2, and incorporated by reference is a true and accurate copy of the audio-video recording of the occurrence that was recorded on the Decatur Police Department's recording system from the squad car I was operating that night.


_____ /s/ Sgt. C.E. Shull _____
SGT. C. E. SHULL


SUBSCRIBED and SWORN to before me this 21st day of September 2017.


_ /s/ Kimberly A. Casner _____
Notary Public

# CASE SUPPLEMENTAL REPORT

Printed: 08/17/2016 08:21

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY.

| | | |
|---|---|---|
| Case Status: *ACTIVE/PENDING* | Case Mng Status: *NA* | Occurred: *09/24/2015* |
| Offense: *POSSESSION OF CANNABIS 30GM AND UNDER* | | |

| | |
|---|---|
| Investigator: *SHULL, C. E. (CS0233)* | Date / Time: *08/17/2016 04:24:13, Wednesday* |
| Supervisor: *SHULL, C. E. (CS0233)* | Supervisor Review Date / Time: *08/17/2016 05:30:42, Wednesday* |
| Contact: | Reference: *Follow-up* |

On 09/24/15 at approx 2333 hours, I heard Ofc. Closen request more units at their traffic stop in the 800 block of W. Leafland. I responded to the scene with emergency lights/siren activated which inturn activated my in car video camera to record my interactions on the stop. Upon arrival, I observed the scene was secure with the suspect who was causing problems in custody. I assisted the officers on scene with supervising the incident as the street Sergeant on this date. It should be noted that the resistive suspect was later identified as Kimberly E. Allen-Jones ( ▓▓▓▓▓▓▓ Kimberly was on the ground, outside of the passenger side door of the black Monte Carlo that had been stopped. Kimberly was also in handcuffs. It was found that Kimberly had possibly ingested some unknown narcotics and was acting as if she was unresponsive. DAS was notified and responded to the scene.

I noticed a subject later identified as Annette L. Parker( ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ standing near the area where this incident took place. One of my duties as a street Sergeant is to interview subjects present to see if they may have witnessed the incident take place between suspects and officers where use of force or an injured prisoner is involved. I asked Annette if she would speak to me about what she had observed. Annette seemed hesitant at first, making statements similar to she did not want to make a police report. I advised Annette that I just wanted to speak to her about what she may have witnessed.

Annette stated that she was on her mother's porch approx 2 houses east of the location of the traffic stop. Annette observed the car being pulled over and then the bike police showed up. Annette could not make out what was being said by anyone around the traffic stop due to the distance away from the stop she was. Annette walked around the squad car, because she could not see what was happening on the passenger side of the vehicle. Annette described the vehicle as blocking her view and the windows being tinted. Annette said when she got to the passenger side of the vehicle, the driver was in handcuffs and Kimberly was on the ground.

I asked Annette if she observed anyone else in the area who might have witnessed this. Annette said that she did not see anyone else, but did not know if anyone could have been looking out of their windows. My interview was interrupted for a short amount of time due to the fact of Kimberly causing problems with the ambulance crew in the back of the ambulance. I then briefly spoke with Annette again and was again advised that she was unable to see what exactly took place between the officers and the suspect.

It should be noted that while Kimberly was in the back of the ambulance she was screaming something similar to, Ya'all trying to kill me. Kill me, Kill me, I don't care, Kill me. I instructed officers on scene to take Kimberly to St. Marys due to her behavior and the potential for her being involuntarily admitted. I later followed Ofc. Hagemeyer to St. Mary's Hospital.

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

# CASE SUPPLEMENTAL REPORT

Printed: 08/17/2016 08:21

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*  Case Mng Status: *NA*  Occurred: *09/24/2015*

Offense: *POSSESSION OF CANNABIS 30GM AND UNDER*

Investigator: *SHULL, C. E. (CS0233)*  Date / Time: *08/17/2016 04:24:13, Wednesday*

Supervisor: *SHULL, C. E. (CS0233)*  Supervisor Review Date / Time: *08/17/2016 05:30:42, Wednesday*

Contact:  Reference: *Follow-up*

See other officers reports/follow ups for more information.

Investigator Signature  Supervisor Signature

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,                      )
                                              )
                        Plaintiff *Pro Se,*   )
            vs.                               )   Case No. 16-cv-2089
                                              )
CITY OF DECATUR, DECATUR POLICE               )
DEPARTMENT, OFFICER CLOSEN,                   )
OFFICER DUFFY, OFFICER                        )
HAGEMEYER, OFFICER SAWYER,                    )
OFFICER SHULL, and OFFICER ZILLER,            )
                                              )
                        Defendants.           )

## OFFICER HAGEMEYER'S AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUR AFFIANT, Jaime L. Hagemeyer, on oath states and avers:

1. I am a Police Patrol Officer for the City of Decatur, and have been since before September 24, 2015.

2. Attached hereto as Hagemeyer Affidavit Exhibit 1, and incorporated by reference is a copy of the "Case Supplemental Report" I prepared regarding an incident that occurred shortly after 11:30 P.M. on September 24, 2015, in the 800 block of W. Leafland in Decatur, Illinois, involving Kimberly Allen-Jones.

3. The "Case Supplemental Report" is a true and accurate account of my observations of traffic stop and subsequent hospitalization of Kimberly Allen-Jones, alleged in Kimberly Allen Jones' Complaint in this case.

4. If called to testify in this cause, I would testify substantially as set forth in my "Case Supplemental Report".



MOTION FOR
SUMMARY JUDGMENT

Exhibit 9

-2-

5.  I was not present when Officer Closen used his department issued Taser to subdue Kimberly Allen-Jones.

6.  I was not present when Kimberly Allen-Jones was removed from the vehicle, arriving on scene as Officers Closen and Duffy finished handcuffing Allen-Jones.

7.  I was not present when Officer Duffy applied pressure to the pressure point behind Kimberly Allen-Jones' right ear, to attempt to get her to spit something out of her mouth before she swallowed it.

8.  Attached hereto as Hagemeyer Affidavit Exhibit 2, and incorporated by reference is a true and accurate copy of the audio-video recording of the occurrence that was recorded on the Decatur Police Department's recording system from the squad car I was operating that night.

FURTHER AFFIANT SAYETH NOT.

    /s/ J.L Hagemeyer_____
         J. L. HAGEMEYER

SUBSCRIBED and SWORN to before me this 25th day of September 2017.

    /s/ Kelly J. Geisler_____
           Notary Public

# CASE SUPPLEMENTAL REPORT

Printed: 08/09/2016  10:51

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*     Case Mng Status: *NA*     Occurred:

Offense: *.F.*

---

Investigator: *HAGEMEYER, J. L. (JH1327)*     Date/Time: *09/25/2015 05:01:10, Friday*

Supervisor: *SHULL, C. E. (CS0233)*     Supervisor Review Date/Time: *09/25/2015 06:05:35, Friday*

Contact:     Reference: *Follow-up*

---

On this date, I was dressed in full Decatur Police uniform and driving a fully marked squad car (816).

On 09-24-15 at approximately 2334 hours, Officer Closen advised over the radio that he needed assistance at a traffic stop, 855 W Leafland Ave.

Upon arrival, I observed Officer Closen handcuffing a B/M later identified to be, Darelle D Fox ⬛⬛⬛⬛⬛⬛, at the rear of Officer Duffy's squad car. Upon exiting my squad car, Officer Closen advised Officer Sawyer and Officer Duffy were on the passenger side of Darelle's vehicle with an uncooperative female who swallowed something.

I ran to the passenger side of the vehicle and observed a B/F later identified to be, Kimberly E Allen-Jones (⬛⬛ ⬛⬛⬛⬛⬛), lying in the driveway on her stomach just outside the front passenger door. I observed Officer Duffy attempting to finish handcuffing Kimberly's hand behind her back as Officer Sawyer held onto Kimberly's arms. I observed Kimberly trying to pull away from Officer Duffy and Officer Sawyer. As I bent over intending to help keep Kimberly from resisting, Officer Duffy was able to finish handcuffing Kimberly. As soon as Officer Duffy finished handcuffing Kimberly, Kimberly closed her eyes and would not respond to officers.

I observed Kimberly breathing normal and could see her eyes fluttering appearing as though she was having trouble keeping her eyes tightly closed. Officer Closen called for DAS as Kimberly was placed on her side. Once on her side, I attempted to talk to Kimberly and asked her what she swallowed. Kimberly mumbled "psych pills". Kimberly would not elaborate on what kind of medication she swallowed and Kimberly would not identify herself.

I then search Kimberly and located an approximate two inch glass smoking pipe in her front left skirt pocket. The pipe was broken and had black char on one end. Through my police training and experience I know that this type of glass smoking pipe is commonly used to smoke crack cocaine. I immediately turned the glass smoking pipe over to Officer Duffy. While speaking to Kimberly I observed another glass smoking pipe with charred ends lying just outside the passenger side door. I also observed a large clear bag with several small baggies inside filled with what appeared to be cannabis lying in the driveway just outside the passenger front door. I did not observed this clear bag up close.

I stayed with Kimberly until DAS arrived. I took Kimberly out of handcuffs and DAS placed Kimberly inside the ambulance. I then walked back to my squad car. Once at my squad car, I could hear yelling coming from the ambulance. I exited my squad car and went to the rear of the ambulance. At the rear of the ambulance, I observed Kimberly struggling with Fire Fighters and DAS. Officer Sawyer was also inside the ambulance and had to restrain Kimberly to the gurney. Due to the amount of personnel inside the ambulance, I did not go inside.

Inside the ambulance the following personnel were present:

Decatur Ambulance: James Leasley and Jeff Duncan.

---

Investigator Signature:

CASE SUPPLEMENTAL REPORT

Printed: 08/09/2016 10:51

*City Of Decatur Police Department*

OCA: *15010864*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE/PENDING*　　　Case Mng Status: *NA*　　　Occurred:

Offense: *.F.*

Fireman: Lt Downey, Fireman German and Fireman Ryder.

Decatur Police: Officer Sawyer.

Officer Sawyer and Sergeant Shull advised while Kimberly was in the ambulance she made suicidal statements.  Officer Sawyer advised Kimberly stated something similar to, Kill me, Kill me, I don't care.

I followed DAS to St Mary's Hospital.

Upon arrival to St. Mary's, I filled out a Petition for Involuntary Admission for Kimberly, and included a copy with this report.

Security Officer Andrew Rathnow took custody of Kimberly at 0013 hours.

Kimberly's admission number is ███████

Kimberly was seen by Dr Sagha.

I was later advised by St Mary's emergency room staff that Kimberly's lab work tested positive for cocaine.

Dr. Sagha advised Kimberly was showing signs of psychotic behavior and would be admitted into the hospital.

See Officer Closen's preliminary report.

Investigator Signature:

E-FILED

Monday, 10 April, 2017  04:34:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,     )
          )
        Plaintiff *Pro Se,*     )
          )    Case No. 16-cv-2089
    vs.        )
          )
CITY OF DECATUR, DECATUR POLICE     )
DEPARTMENT, OFFICER CLOSEN,     )
OFFICER DUFFY, OFFICER     )
HAGEMEYER, OFFICER SAWYER,     )
OFFICER SHULL, and OFFICER ZILLER,     )
          )
        Defendants.     )

## AFFIDAVIT OF DECATUR POLICE OFFICER J.J. CLOSEN

YOUR AFFIANT Decatur Police Officer J.J. Closen, on oath, hereby states and avers as follows:

1. For much of the occurrence advocated in plaintiff's complaint, I had a clear view of plaintiff Kimberly Allen-Jones.

2. I observed Kimberly Allen-Jones attempt to hide something between her legs under her skirt as she sat in the front passenger seat of the vehicle.

3. I observed Kimberly Allen-Jones place what I believed to be a clear plastic bag in her mouth, as I engaged the driver of the vehicle.

4. I ordered Kimberly Allen-Jones many times to "spit it out!", referring to whatever plaintiff placed in her mouth.

5. I heard Officer Duffy also order her to "spit it out".

6. Kimberly Allen-Jones ignored my and Officer Duffys' orders.

MOTION FOR
SUMMARY JUDGMENT

Exhibit 15

-2-

7.  Kimberly Allen-Jones was combative, and prepared herself to kick officer Duffy with both legs, as he attempted to remove her from the vehicle, by placing her back toward the center console of the vehicle and drawing her legs to her chest, with her feet toward Officer Duffy.

8.  I applied a single short burst from my taser in "drive stun" mode, to Kimberly Allen-Jones' back, to prevent her from kicking Officer Duffy.

9.  Officer Duffy used an arm bar takedown maneuver, to remove Kimberly Allen-Jones from the vehicle.

10. Officer Duffy restrained Kimberly Allen-Jones' right arm in a transport hold.

11. The driver of the vehicle denied the controlled substance found next to Kimberly Allen-Jones was his.

12. Kimberly Allen-Jones was in possession of controlled substances found on the ground next to her after she was removed from the vehicle.

13. I prepared and submitted a use of force report as required by Decatur Police Department Policy.


FURTHER AFFIANT SAYETH NOT.

/s/ J.J. Closen
J.J. CLOSEN


SUBSCRIBED and SWORN to before me this 27th day of March 2017.


/s/ Jill L. Crawford
Notary Public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,        )
                                      )
            Plaintiff *Pro Se,*      )
     vs.                     )   Case No. 16-cv-2089
                                      )
CITY OF DECATUR, DECATUR POLICE  )
DEPARTMENT, OFFICER CLOSEN,     )
OFFICER DUFFY, OFFICER          )
HAGEMEYER, OFFICER SAWYER,     )
OFFICER SHULL, and OFFICER ZILLER, )
                                      )
           Defendants.       )

### AFFIDAVIT OF DECATUR POLICE OFFICER K.A. DUFFY

YOUR AFFIANT Decatur Police Officer K.A. Duffy, on oath, hereby states and avers as follows:

1.  I heard Officer Closen tell Kimberly Allen-Jones, "whatever you are sticking in your pants, knock it off", and order her to get her hands out.

2.  Officer Closen advised officer Sawyer to remove Kimberly Allen-Jones from the vehicle because it appeared she was attempting to conceal something.

3.  I observed Kimberly Allen-Jones place something in her mouth that appeared to be a small white object in a clear plastic baggie knotted on one end.

4.  I ordered Kimberly Allen-Jones many times to "spit it out!", referring to whatever she placed in her mouth.

5.  I heard Officer Closen also order Kimberly Allen-Jones to "spit it out".

6.  Kimberly Allen-Jones ignored my and Officer Closen's orders.

-2-

7. Kimberly Allen-Jones was combative, and prepared herself to kick me with both legs, as I attempted to remove her from the vehicle, by placing her back toward the center console of the vehicle and drawing her legs to her chest, with her feet toward me.

8. Officer Closen applied a single short burst from his taser in "drive stun" mode, to Kimberly Allen-Jones' back, to prevent plaintiff from kicking me.

9. I used an arm bar takedown maneuver, to remove Kimberly Allen-Jones from the vehicle.

10. I restrained Kimberly Allen-Jones' right arm in a transport hold and applied pressure to the pressure point just behind her right ear, to attempt to cause her to spit out whatever she placed in her mouth. I ceased applying presure when it became apparent Kimberly Allen-Jones was not going to spit out the substance she put in her mouth.

11. My use of force, in removing plaintiff from the vehicle, was a measured response to plaintiff's appearing to ingest a clear plastic bag, and was necessary to attempt to prevent plaintiff from harming herself and destroying evidence.

12. The driver of the vehicle denied the controlled substance found next to Kimberly Allen-Jones was his.

13. Kimberly Allen-Jones was in possession of controlled substances found on the ground next to her left leg after she was removed from the vehicle.

-3-

14. I submitted a use of force report as required by Decatur Police Department

Policy.


FURTHER AFFIANT SAYETH NOT.

    /s/ K.A. Duffy
                K.A. DUFFY


SUBSCRIBED and SWORN to before me this 27th day of March 2017.


    /s/ Jill L. Crawford
                Notary Public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,    )
                                  )
        Plaintiff *Pro Se,*    )
  vs.                       )  Case No. 16-cv-2089
                                  )
CITY OF DECATUR, DECATUR POLICE  )
DEPARTMENT, OFFICER CLOSEN,   )
OFFICER DUFFY, OFFICER         )
HAGEMEYER, OFFICER SAWYER,    )
OFFICER SHULL, and OFFICER ZILLER, )
                                  )
        Defendants.     )

## AFFIDAVIT OF DECATUR POLICE OFFICER J.M. SAWYER

YOUR AFFIANT Decatur Police Officer J.M. Sawyer, on oath, hereby states and avers

as follows:

1. I heard Officer Closen tell Kimberly Allen-Jones, "whatever you are sticking in

   your pants, knock it off", and order her to get her hands out.

2. Officer Closen advised me to remove Kimberly Allen-Jones from the vehicle

   because it appeared she was attempting to conceal something.

3. I heard Officer Duffy state, "She's eating it.  She's eating it."

4. I believed Kimberly Allen-Jones was attempting to ingest narcotics or other

   contraband.

5. Plaintiff was combative, and prepared herself to kick Officer Duffy with both

   legs, as he attempted to remove her from the vehicle, by placing her back

   toward the center console of the vehicle and drawing her legs to her chest,

   with her feet toward Officer Duffy.

-2-

6. I observed Officer Closen apply a single short burst from his taser in "drive stun" mode, to Kimberly Allen-Jones' back, to prevent her from kicking Officer Duffy.

7. I observed Officer Duffy use an arm bar takedown maneuver, to remove Kimberly Allen-Jones from the vehicle. Officer Duffy and I ordered Kimberly Allen-Jones many times to "spit it out!", referring to whatever she placed in her mouth.

8. Kimberly Allen-Jones ignored my and Officer Closen's orders and appeared to be actively chewing the substance she placed in her mouth.

9. I observed Officer Duffy restrain Kimberly Allen-Jones, right arm in a transport hold and apply pressure to the pressure point just behind her right ear, to attempt to cause her to spit out whatever she placed in her mouth.

10. Officer Duffy's use of force, in removing Kimberly Allen-Jones from the vehicle, appeared to me to be a measured response to her appearing to ingest a clear plastic bag, and appeared necessary to attempt to prevent her from harming herself and destroying evidence.

11. The driver of the vehicle denied the controlled substance found next to Kimberly Allen-Jones was his.

12. Kimberly Allen-Jones was in possession of controlled substances found on the ground next to her after she was removed from the vehicle.

FURTHER AFFIANT SAYETH NOT.

                              /s/ J.M. Sawyer
                                  J.M. SAWYER

-3-

SUBSCRIBED and SWORN to before me this 27th day of March 2017.


_/s/  Jill L. Crawford_____
Notary Public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES, )
)
Plaintiff *Pro Se,* )
)
vs. ) Case No. 16-cv-2089
)
CITY OF DECATUR, DECATUR POLICE )
DEPARTMENT, OFFICER CLOSEN, )
OFFICER DUFFY, OFFICER )
HAGEMEYER, OFFICER SAWYER, )
OFFICER SHULL, and OFFICER ZILLER, )
)
Defendants. )

### AFFIDAVIT OF DECATUR POLICE SERGEANT C.E. SHULL

YOUR AFFIANT, Decatur Police Sergeant C.E. Shull, on oath, states and avers as follows:

1. When I arrived at the scene of the occurrence advocated in plaintiff Kimberly Allen-Jones' complaint, the scene was secure and plaintiff was in custody.

2. I first observed plaintiff when she was lying on the ground outside the passenger door of a black Monte Carlo, in handcuffs.

3. I was not present when plaintiff was secured in the handcuffs, or before.

4. I did not observe Officers use a taser on Kimberly Allen-Jones, nor did I see Officer Duffy apply pressure to the pressure point behind Kimberly Allen-Jones' right ear.

5. I did not observe any Officer use force on plaintiff, excessive or otherwise.

-2-

FURTHER AFFIANT SAYETH NOT.

/s/ Sgt. C. E. Shull
SGT. C. E. SHULL

SUBSCRIBED and SWORN to before me this 27th day of March 2017.

/s/ Jill L. Crawford
Notary Public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIMBERLY E. ALLEN-JONES,                    )
                                            )
                    Plaintiff *Pro Se,*     )
                                            )   Case No. 16-cv-2089
        vs.                                 )
                                            )
CITY OF DECATUR, DECATUR POLICE             )
DEPARTMENT, OFFICER CLOSEN,                 )
OFFICER DUFFY, OFFICER                      )
HAGEMEYER, OFFICER SAWYER,                  )
OFFICER SHULL, and OFFICER ZILLER,          )
                                            )
                    Defendants.             )

## AFFIDAVIT OF DECATUR POLICE OFFICER J. L. HAGEMEYER

YOUR AFFIANT, Decatur Police Officer J.L. Hagemeyer, on oath, states and avers as follows:

1. When I arrived at the scene of the occurrence advocated in plaintiff Kimberly Allen-Jones' complaint, I observed her attempting to pull away from Officers Duffy and Sawyer, as they attempted to handcuff her. She was lying on the ground on her stomach outside the passenger door of a black Monty Carlo.

2. I did not observe Officers use a taser on Kimberly Allen-Jones, nor did I see Officer Duffy apply pressure to the pressure point behind Kimberly Allen-Jones' right ear.

3. After she was placed in handcuffs, I observed Kimberly Allen-Jones close her eyes and refuse to respond to officers. She was breathing normal, and her eyes were fluttering appearing as though she was having difficulty. keeping her eyes closed.

4.  I asked Kimberly Allen-Jones what she swallowed.  She mumbled, "psych pills".

5.  I had no idea who I was dealing with because Kimberly Allen-Jones refused to identify herself to me or anyone at the scene, including members of the Decatur Fire Department and the Decatur Ambulance Service.

6.  I located a two inch glass smoking pipe in Kimberly Allen-Jones' left skirt pocket, and observed a large clear bag with several small baggies inside it lying in the driveway just outside the passenger door by Kimberly Allen-Jones.

7.  I did not observe any Officer use excessive force on plaintiff.

FURTHER AFFIANT SAYETH NOT.

_/s/  J.L. Hagemeyer_____
J. L. HAGEMEYER

SUBSCRIBED and SWORN to before me this 27th day of March 2017.

_____/s/  Jill L. Crawford_____
Notary Public