UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY ALLEN-JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-2089-JBM |
| | ) |
| CITY OF DECATUR, et al., | ) |
| | ) |
| Defendants. | ) |

**SUMMARY JUDGMENT ORDER**

Plaintiff, Kimberly Allen-Jones, proceeding pro se and presently incarcerated at Logan Correctional Center, filed suit under 42 U.S.C. § 1983, alleging that the City of Decatur, Decatur Police Department, Officer Closen, Officer Duffy, and Unnamed Decatur Police Officers violated her constitutional rights during the course of a traffic stop of a vehicle in which she was a passenger. On June 30, 2016, the Court entered a merit review order [18], finding that Plaintiff stated four claims: (1) an unlawful arrest claim against Defendants Closen and Duffy; (2) an excessive force claim against Defendants Closen and Duffy; (3) a failure to protect claim against Defendant John Doe; and (4) a *Monell* claim against the City of Decatur, Illinois.

On July 1, 2016, the Court entered a text order directing the Clerk of the Court to terminate the Decatur Police Department as a party because it is not a person capable of being sued under § 1983. On January 23, 2017, the Court granted Plaintiff's motion to amend her complaint to add Officers Hagemeyer, Sawyer, Shull, and Ziller to her failure to protect claim, and to terminate Defendant John Doe. On March 2, 2017, the Court granted Plaintiff's motion to dismiss Defendant Ziller.

Now before the Court for consideration are cross-motions for summary judgment filed by Plaintiff [75] and Defendants [88]. Defendants have filed a response [78] to Plaintiff's motion,

and Plaintiff has filed a response [95] to Defendants' motion, to which Defendants have filed a reply [96]. Based on the parties' pleadings, depositions, affidavits, and other supporting documents filed with the Court, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I. MATERIAL FACTS

On the evening of September 24, 2015, Plaintiff was a passenger in a vehicle being driven by one of her friends. Defendants Closen, Sawyer, Duffy, and Hagemeyer were on duty that night as police officers for the City of Decatur. Defendant Shull was on duty as a sergeant with the City of Decatur. Closen and Sawyer were assigned to bike patrol, and Duffy was working as their chase car. At approximately 11:30 p.m., Closen observed a vehicle make a turn without displaying a turn signal. Closen relayed this information to Duffy who conducted a traffic stop of the vehicle. When Closen and Sawyer arrived on the scene, they observed Duffy standing at the driver-side window of the vehicle and speaking with the driver. Duffy's squad car was equipped with a video camera, which activated when he engaged his emergency lights. Duffy's squad car, however, was parked at such an angle that the camera failed to capture the video of most of what followed, although it did capture the audio.

The events that took place during the traffic stop are mostly in dispute. According to Plaintiff, Defendant Duffy yelled, "She put something in her mouth" and then ran to the passenger-side door yelling "spit it out" approximately fifty times. Plaintiff did not have anything in her mouth, however. Out of panic, fear, and terror, she curled into a fetal position such that her feet were toward the passenger-side door. She did not say anything to Duffy in response to his commands because there was nothing in her mouth. Duffy opened the passenger-side door, and soon thereafter, Defendant Closen went through the driver-side door and applied a

burst from his Taser to Plaintiff's back. Plaintiff went forward, and Duffy pulled her from the vehicle and slammed her down onto the concrete. He immediately grabbed her by the neck and started choking her with both hands. His grip continued to get tighter, making it difficult for her to breathe. Everything started fading slowly to black until she died. Plaintiff knows she died because she had a near-death experience where she saw the gates of Heaven and her dead relatives. When she came back to life, she was strapped in a gurney and being placed into an ambulance.

Defendants have a different version of events. While Defendant Duffy was talking to the driver of the vehicle, Defendant Closen approached both of them. Based on the driver's admission that his driver's license was suspended, Closen asked him to step out of the vehicle and then began to pat him down. At that point, Closen observed Plaintiff place her left hand between her legs and up the front of her skirt in a motion that indicated an attempt to conceal contraband. He immediately yelled, "Whatever you're sticking in your pants, knock it off." He ordered Plaintiff to show him her hands. She then brought her left hand up and placed into her mouth a small, plastic baggie containing a white substance. Based on his experience, Closen believed the baggie and white substance to be consistent with narcotics packaged for street-level sale.

Defendant Closen told Sawyer to get Plaintiff out of the car. Duffy also headed toward Plaintiff while keeping an eye on her. Before Sawyer made it to the passenger-side door, Plaintiff began a chewing motion with her jaw, which Closen and Duffy interpreted as an attempt to destroy evidence. Duffy shouted, "She's eating it, she's eating it." He ordered Plaintiff to stop chewing. Plaintiff turned her back toward the center console of the vehicle and brought her knees up to her chest as if she were going to kick Duffy with both feet when he opened the door. Duffy

opened the door and attempted to obtain control of Plaintiff's right arm with both hands. Plaintiff responded by pulling away from Duffy. Defendant Closen then delivered a single burst from his Taser to Plaintiff's back as he ordered her to spit out what she was concealing. The events described in this paragraph took approximately six or seven seconds to occur.

As a result of the burst from the Taser, Plaintiff's upper body lunged forward toward the open passenger-side door, and Duffy removed her from the vehicle. Duffy placed Plaintiff's face on the ground and restrained her. Defendant Sawyer assisted in restraining her. Duffy then applied pressure to the pressure point just behind her right ear and ordered her multiple times to spit out what she had put in her mouth. Plaintiff continued to chew and refused to open her mouth. For the next minute, Plaintiff can be heard on the video making moaning or groaning sounds while she was continuously being ordered to "spit it out" and "stop chewing." Duffy denies that he ever placed his hands on Plaintiff's neck.

Defendant Duffy secured Plaintiff in handcuffs. Plaintiff immediately stopped moving and shut her eyes tightly as if she were unconscious or unresponsive. She appeared to be breathing normally. Decatur Ambulance Service was called to the scene. Defendant Hagemeyer arrived on the scene while Plaintiff was being handcuffed, and Defendant Shull arrived moments later, at which point Plaintiff was in custody. The video cameras in Hagemeyer and Shull's squad cars were activated, which confirm the moment they arrived on the scene, although they do not capture much else of relevance.

As Plaintiff lay handcuffed on the concrete, Defendant Sawyer observed several plastic bags next to Plaintiff's leg. The bags contained various substances, individually packaged, that later tested positive for cannabis, crack/cocaine, and heroin. Plaintiff denies that the drugs were

hers and states that the driver of the vehicle threw the bags out of the passenger-side window when Duffy initiated the traffic stop.

Decatur Ambulance Service arrived on the scene. Medical personnel placed Plaintiff on a gurney and secured her in the back of the ambulance. She was then transported to the hospital where she was involuntarily admitted and then released a few days later. Plaintiff's lab work tested positive for cocaine. Plaintiff attributes the lab results to her smoking crack cocaine one or two days before the traffic stop. Plaintiff was ultimately charged in state court with, and pleaded guilty to, two counts of unlawful possession of a controlled substance with a prior conviction. Plaintiff states that the only reason she pleaded guilty was because of ineffective assistance of counsel and her attorney's failure to tell her that there was no probable cause for her arrest. Plaintiff's criminal conviction has not been overturned on appeal or otherwise rendered invalid.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a genuine dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

### III. ANALYSIS

As set forth in the Court's merit review order, Plaintiff states the following claims: (1) an unlawful arrest claim against Defendants Closen and Duffy; (2) an excessive force claim against Defendants Closen and Duffy; (3) a failure to protect claim against Defendants Sawyer, Hagemeyer, and Shull; and (4) a *Monell* claim against the City of Decatur, Illinois.

**A.    Unlawful Arrest**

"In order to prevail in an unlawful arrest action, the plaintiff must show lack of probable cause." *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). "Probable cause requires only a probability or a substantial chance of criminal activity not an actual showing of such activity." *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

Plaintiff argues that she is entitled to summary judgment because the controlled substances she was arrested for possessing were found on the ground and not on her person. She argues that the driver of the vehicle threw the controlled substances out of the passenger-side window. Therefore, she argues, these facts establish there was no probable cause to arrest her for

possession of controlled substances. Defendants Closen and Duffy argue that the controlled substances found next to Plaintiff supplied the necessary probable cause to arrest her.

Plaintiff and Defendants Closen and Duffy do not dispute that Plaintiff was removed from the vehicle and placed on the ground, although they do dispute the amount of force that was used. They also do not dispute that the controlled substances were found next to Plaintiff. Given these undisputed facts, a reasonable person would believe there was a probability that the controlled substances were in Plaintiff's possession just moments earlier. Whether the controlled substances were hers or not, which is disputed, is irrelevant to the probable-cause analysis because an actual showing of criminal activity is not necessary to establish probable cause. Therefore, the Court finds that no rational juror could conclude that Defendants Closen and Duffy lacked probable cause to arrest Plaintiff for possession of a controlled substance.

**B. Excessive Force**

Claims of excessive force that occurred before conviction are analyzed under Fourth Amendment jurisprudence. *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008). In determining whether officers used excessive force in subduing a suspect or an arrestee, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The facts underlying Plaintiff's excessive force claim are mostly disputed. Plaintiff presents evidence that she was not attempting to conceal or destroy evidence and that she did not attempt to kick Defendant Duffy. She also presents evidence that Duffy slammed her down onto the concrete and choked her, literally, to death. Closen and Duffy present evidence of the exact opposite series of events: Plaintiff attempted to conceal and destroy evidence, she attempted to

kick Duffy when he opened the door, and Duffy used only the minimal force necessary to restrain her and to get her to spit out whatever she had put in her mouth. Whether it was reasonable for Closen to use his Taser on Plaintiff and whether it was reasonable for Duffy to use the amount of force he did to restrain Plaintiff depends on whose version of events is believed. Therefore, the Court finds that this claim is best left to a jury to resolve. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("[S]ince the *Graham* reasonableness inquiry 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'")

Defendants Closen and Duffy argue, alternatively, that they are entitled to qualified immunity. Viewing the facts in the light most favorable to Plaintiff, however, a reasonable officer would have known that his actions violated Plaintiff's Fourth Amendment right to be free from excessive force. *See Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007). Therefore, Closen and Duffy are not entitled to qualified immunity.

**C.     Failure to Protect**

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original).

Plaintiff argues that she is entitled to summary judgment because Defendants Sawyer, Hagemeyer, and Shull failed to protect her from Defendant Duffy assaulting her. Sawyer, Hagemeyer, and Shull argue that Duffy did not use excessive force on Plaintiff, so they cannot be held liable for a failure to protect. As the Court explained under Plaintiff's excessive force claim, however, there is a genuine dispute whether Duffy used excessive force on Plaintiff. Therefore, the Court cannot grant summary judgment to either Plaintiff or Defendants on this ground.

Defendants Hagemeyer and Shull, however, also argue that they are entitled to summary judgment because they were not present when Defendant Duffy allegedly used excessive force on Plaintiff. They present evidence that when they arrived on the scene, Plaintiff was being handcuffed or was already in handcuffs. The video shows Hagemeyer arriving on the scene just over one minute after Closen used his Taser on Plaintiff. The video shows Shull arriving approximately twenty seconds after Hagemeyer. Plaintiff testified that after Closen used his Taser on her, Duffy pulled her from the vehicle and "immediately" began choking her. Although Plaintiff argues that Hagemeyer and Shull were both present when Duffy choked her, she fails to present any evidence to support her argument. Therefore, the Court finds that no rational juror could find that Hagemeyer and Shull had an opportunity to intervene when Duffy allegedly used excessive force on her.

**D.    *Monell* Claim**

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that

the government as an entity is responsible under § 1983." *Id.* at 694. The Seventh Circuit has "identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)).

Plaintiff argues that she is entitled to summary judgment because "[f]or decades, the City of Decatur has continually allowed its members of the Decatur Police Department and its police officers to terrorize and subject many of its citizens, [especially] minorities, to gross misconduct with no oversight and very minor or no discipline." (Pl.'s Mot. Summ. J. 5–6, ECF No. 75.) Plaintiff, however, presents very little evidence to support her argument. She submits two "Professional Standards Internal Affairs Officer Summary" reports, one for Defendant Closen and one for Defendant Duffy. She argues that these reports show that complaints from citizens results "in little or no action taken against the officers." (*Id.*) Plaintiff also states that her brother and cousin both "settled excessive use of force lawsuits with the City of Decatur along with many other [unnamed] citizens." (*Id.*) This evidence, however, is insufficient to establish a wide-spread practice of the City or that the City's conduct was the "moving force" behind the deprivation of Plaintiff's constitutional rights. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997). Therefore, the Court finds that no rational juror could conclude that the City of Decatur is liable for the alleged deprivation of Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's motion for summary judgment [75] is DENIED.

2) Defendants' motion for summary judgment [88] is GRANTED in part and DENIED in part. Summary judgment is granted to Defendants Closen and Duffy on Plaintiff's unlawful arrest claim, to Defendants Hagemeyer and Shull on Plaintiff's failure to protect claim, and to the City of Decatur on Plaintiff's *Monell* claim. Summary judgment is denied to Defendants Closen and Duffy on Plaintiff's excessive force claim and to Defendant Sawyer on Plaintiff's failure to protect claim.

3) The following claims remain for trial: (1) Plaintiff's excessive force claim against Defendants Closen and Duffy; and (2) Plaintiff's failure to protect claim against Defendant Sawyer.

4) This case is referred to the Magistrate Judge for a settlement conference. A final pretrial and jury trial will be scheduled if no settlement is reached.


December 19, 2017                                    s/ Joe Billy McDade
ENTERED                                              JOE BILLY MCDADE
                                                                  UNITED STATES DISTRICT JUDGE